S93A0766. RUGER v. THE STATE.
(436 SE2d 485)

HUNSTEIN, Justice.

Theodore Elting Ruger, Jr. was convicted and sentenced for the murder of Jesse Shrewsbury and possession of a firearm during the commission of a felony.[1] He appeals from the denial of his motion for new trial.

1. The jury was authorized to find that Shrewsbury and appellant, an employee in the victim's business, came to Georgia looking for work and stayed at the home of a Shrewsbury family friend, Dr. Charles Artley. On April 15, 1989, after Dr. Artley left the home, the victim and appellant were observed by neighbors in Dr. Artley's yard during the afternoon and from telephone calls it was established that both men were present in the house until 8:00 p.m., but that no one answered the phone at 9:45 p.m. When Dr. Artley returned at 11:00 p.m., he found the house empty and the car driven by the victim gone. The victim, whose body was found the next morning, had been shot twice in the head on the back porch and dragged from there and placed under a canoe in the back yard. The shots were fired from a distance of less than one foot with bullets consistent with the pistol Dr. Artley discovered was missing from his home. There were no signs

---

[1] The homicide occurred on April 15, 1989. Ruger was indicted in November 1989 in Hall County. He was found guilty on October 2, 1990 and sentenced the same day. His motion for new trial was filed October 30, 1990 and denied September 1, 1992. A notice of appeal was filed on September 30, 1992. The appeal was docketed on February 25, 1993. Oral arguments were heard on May 17, 1993.

that any struggle had occurred. The victim's car, his money, and his jewelry were missing and were never found.

Appellant, when apprehended in New York in May 1989, had shoes with a tread design similar to a shoe print made in blood on a back porch step to Dr. Artley's house. A plastic bag found 100 feet from the residence had a fingerprint made by appellant in a reddish-brown material, which the jury was authorized to conclude was blood. The bag contained rags soaked in blood of a type consistent with the victim's blood. Expert testimony was adduced that had blood come into contact with a fingerprint already on the bag, the blood would either have erased the print or prevented it from being later identified. An inmate in the detention center with appellant testified that appellant had spoken to him about shooting the victim in the head.

Appellant testified that because of the lack of job prospects, he decided that April 15th to hitchhike to New York to attend a custody hearing regarding his children scheduled sometime in May and that when he left, the victim was alive and well.

We find the evidence adduced at trial sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of the charged crimes under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. All of appellant's enumerations of error involve testimony about an experiment, conducted at the State Crime Laboratory, that involved impressing bloodprints on plastic. At trial, Connie Pickens, a forensic serologist at the lab who conducted the experiment with assistance from latent print examiners, testified that the purpose of the experiment was to determine whether serological testing could show the presence of blood in a bloodprint impressed on plastic *after* the print had gone through the same type of fingerprint-processing treatment used by the lab's latent print examiners on State's Exhibit 25 (the plastic bag with the bloodprint the State contended was made by appellant). Pickens detailed for the jury the different methods she had used to affix bloodprints to strips of plastic bags, and the jury was allowed to view the processed prints on the plastic strips and thus could observe for themselves the clarity of the processed bloodprints.

Although Pickens did not expressly state the results of her experiment, it is apparent that her testimony was used to demonstrate to the jury that bloodprints could be made on plastic and that thereafter the presence of blood could be detected in a processed fingerprint and the maker of the print identified. Appellant objected to the admission of the experiment testimony at trial and introduced at the hearing on his motion for new trial the testimony of a chemist who challenged

the methodology and the inferred results of Pickens' experiment.[2]

(a) Although appellant contends the evidence should have been excluded because not provided in a timely manner prior to trial, see OCGA § 17-7-211, the record establishes that neither Pickens' experiment nor its results were reduced to writing and that appellant was notified about the experiment when the prosecutor first learned of it, the Friday before the Monday trial date. Accordingly, even assuming Pickens' experiment was the type of "scientific evidence" contemplated by OCGA § 17-7-211, but see *Williams v. State*, 251 Ga. 749, 754 (312 SE2d 40) (1983), it was not subject to exclusion on the basis asserted by appellant. *Hair v. State*, 262 Ga. 284 (2) (417 SE2d 657) (1992).

(b) We do not agree with appellant that Pickens' testimony was inadmissible because her experiment involved a type of scientific principle or technique that has not reached a scientific stage of verifiable certainty. See *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982). Pickens' experiment was a practical demonstration of a point in issue, which when made under similar conditions and directly illustrating a material issue may be admitted in the sound discretion of the trial judge. *Bell v. State*, 164 Ga. 292 (3) (138 SE 238) (1927).

> The weight of such testimony is for the jury, and varies according to the circumstances of similarity which they may find to exist between the experiments and the actual occurrence under investigation. [Cits.]

*West v. State*, 200 Ga. 566, 571 (2) (37 SE2d 799) (1946).[3] We find no abuse of the trial court's discretion in determining Pickens' experiment to be with sufficient foundation and allowing its admission in evidence. *Jackson v. State*, 261 Ga. 734 (6) (410 SE2d 115) (1991).

(c) At the hearing on appellant's motion for new trial based on newly discovered evidence, appellant introduced the testimony of an expert witness who challenged the foundation Pickens gave for her

---

[2] We note that the record reflects that four months prior to trial, when the existence of the print in State's Exhibit 25 became known, the trial court granted the defense's motion for continuance and funds were provided to the defense for the purpose of obtaining an expert to determine whether the print was a bloodprint and how such a print could have been made.

[3] For comparable experiments admitted at trial, see, e.g., *West v. State*, supra at 571 (2) (patterns of pellets fired from shotgun at different distances); *Smith v. State*, 180 Ga. App. 620 (2) (349 SE2d 754) (1986) (effect the wearing of dental plates would have on breath test); *McCulligh v. State*, 169 Ga. App. 717 (2) (314 SE2d 724) (1984) (manner in which arm extended through torn screen door would be scratched by wire); *Tuzman v. State*, 145 Ga. App. 761 (7) (244 SE2d 882) (1978) (whether certain dental work allegedly X-rayed by defendant charged with falsifying Medicaid claims would actually show up in X-rays). See also Daniel, Georgia Handbook on Criminal Evidence (2nd ed.), § 7-13.

experiment. The expert testified that the method employed by Pickens in conducting the experiment was scientifically unsound so that the similarities between the results of her experiment and State's Exhibit 25 were thereby rendered suspect.

A new trial on the basis of newly discovered evidence will not be granted if the only effect of the evidence will be to impeach the credit of a witness. *Timberlake v. State*, 246 Ga. 488 (1) (271 SE2d 792) (1980). As noted above, the import of Pickens' testimony about the experiment was that bloodprints made on plastic could successfully be reproduced and the maker of the print, as well as the presence of blood, could be identified after the print was processed. Appellant's newly discovered evidence was tendered to disprove the facts on which Pickens' testimony was founded, i.e., to refute that the facts on which she relied did prove that such bloodprints could be successfully reproduced and identified. Accordingly, because appellant's evidence served only to impeach Pickens' testimony, the trial court did not err by denying appellant's motion for new trial. See *Rogers v. State*, 257 Ga. 590 (2) (a) (361 SE2d 814) (1987).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 22, 1993.

*H. Bradford Morris, Jr.,* for appellant.

*Lydia Sartain, District Attorney, Lee Darragh, Jessica K. Vaughn, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.