## A97A0086. POWELL v. THE STATE.
(487 SE2d 424)

JOHNSON, Judge.

Delores Powell operated a child daycare facility in her home. When an 11-month-old child entrusted to her care sustained a head injury and had difficulty breathing, Powell telephoned for an ambu-

lance, telling emergency medical personnel that the child had fallen head first out of an infant swing onto the floor. The child was taken to the emergency room of a children's hospital, where she was diagnosed as having a skull fracture, blood on the brain, blood under the scalp, and retinal hemorrhaging and folds. Physicians who examined the child opined that her injuries were consistent with or caused by "shaken infant syndrome" followed by blunt force trauma to the head. The injuries resulted in permanent brain damage and total blindness. Powell was charged with cruelty to children, aggravated battery and aggravated assault upon the child. After a jury trial, Powell was found guilty of the offenses of aggravated assault and simple battery. Powell appeals from the judgment of conviction entered on the verdict and the denial of her motion for new trial.

1. Powell claims the trial court erred by allowing two physicians who treated the child to shake a doll in front of the jury as a means of demonstrating the type of shaking they believed caused the child's injuries. We find no error.

Courtroom experiments sometimes make a practical demonstration of the question in issue, and are often the best evidence in elucidating the truth. *Boyce v. State,* 198 Ga. App. 371, 373 (3) (401 SE2d 578) (1991). Generally, whether courtroom demonstrations will be permitted rests within the sound discretion of the trial court. See *Ruger v. State,* 263 Ga. 548, 550 (2) (b) (436 SE2d 485) (1993). The weight of such evidence is for the jury, and varies according to the circumstances of similarity which they may find to exist between the experiments and the actual occurrence under investigation. Id.

In a conference held outside the presence of the jury, the state informed the trial judge it intended to have the physician who was then testifying, Dr. Goo, use the doll to demonstrate the type of force required to cause the injuries suffered by the child. Defense counsel objected to such a demonstration, arguing the state failed to provide advance notice of the intended demonstration; the doll probably weighed more than a baby; and counsel wanted to find out if such a demonstration would be reliable. The trial court ruled that the demonstration would be permitted. Despite the ruling, Dr. Goo was excused without being asked to do the demonstration.

The state asked Dr. Drack, an opthamologist who examined the child in the hospital, to use the doll to demonstrate the type of shaking and impact that would be required in order to cause the child's retinal hemorrhaging and folds. Defense counsel objected on the ground that the prosecutor did not state any intention in the conference to have this particular physician conduct the demonstration. The trial judge noted counsel's objection, incorporated his prior objection, and overruled it. Drack responded that "typically" such eye injuries are caused by "shaking the baby back and forth like this (indicat-

ing).” When asked if the demonstration showed the level of shaking she would expect to cause retinal hemorrhaging and folds, Drack replied that it could, but added the extent of possible damage depends on the individual child.

Dr. Petronio, a pediatric neurosurgeon who treated the child and was qualified as an expert in his field, was asked to demonstrate the type of violent shaking and impact he would expect the child to have suffered for this type of injury to occur. After stating that the doll and the child were approximately the same size, Petronio testified about a baby's head size, brain softness and water content and the brain's tendency to shift in the skull. He added that the child was “either grabbed by the shoulders or by the arms and shaken back and forth like this (indicating), and then thrown against an object.” Petronio testified that he believed the child's injury was not the type caused by a fall from a low height, as the type of injury sustained in this case “requires a violent rocking back and forth of the head.”

(a) Powell complains that the state failed to lay any foundation showing the similarity between the doll and the child until after the second demonstration was conducted, and that the foundation laid at that time included no showing of similarity in head and neck strength, control and movement. Powell did not object to the lack of foundation until after the state began the second demonstration. Because he was required to object when the evidence was introduced at trial, any error asserted as to the first demonstration is waived. See generally *West v. State*, 224 Ga. App. 190, 191 (2) (480 SE2d 238) (1997). Moreover, the fact that the foundation was established after the evidence was admitted is not grounds for reversal, as the trial court may allow the foundation to be laid subsequent to the admission of the evidence. See *Gregg v. State*, 201 Ga. App. 238, 240 (3) (a) (411 SE2d 65) (1991).

As for the second demonstration, after defense counsel objected to the lack of foundation, Petronio testified that the doll was approximately the same size and weight as the child and acknowledged that using the doll would aid his testimony. We do not agree that the state was required to show similarity in head and neck strength, control and movement as part of the foundation. While there should be substantial and reasonable similarity between the facts proved in the case and the facts upon which the demonstration is based, the facts need not be identical; if the facts are sufficiently similar to accomplish the purpose of assisting the jury to intelligently consider the issue of fact presented, the evidence is admissible. See generally *Stephens v. State*, 214 Ga. App. 183, 185 (4) (447 SE2d 26) (1994). Obviously, a demonstration of how shaken infant syndrome occurs would have to be done with a mannequin or doll rather than a real infant. Such an object will differ in many respects from a real child. How-

ever, any dissimilarity between the conditions of the demonstration and the actual occurrence affects the weight rather than the admissibility of the evidence. See *West v. State*, 200 Ga. 566, 571 (37 SE2d 799) (1946); *Stephens*, supra. The doll and child were sufficiently similar to assist the jury in considering the issue of how injuries of the type suffered in this case can result from violent shaking. The foundation was sufficient.

(b) Powell claims the prejudicial effect of the demonstrations outweighed any probative value, noting that the doll's legs came off during the second demonstration. Immediately after the legs became detached, however, the witness testified that a real child's legs would not have been affected by the shaking movement. We note that Powell did not request a mistrial or curative instructions after the incident. The trial court, not this Court, is in the best position to assess whether such evidence has a prejudicial effect on the jury and to weigh the relevancy factor against its prejudicial effect. We find no abuse of discretion. See generally *Burns v. State*, 166 Ga. App. 766, 770 (6) (305 SE2d 398) (1983).

(c) Powell contends the demonstrations effectively allowed the state to introduce matters not in evidence inasmuch as there had been no evidence before the demonstrations as to the level of shaking or number of oscillations which produced the child's injuries. Since counsel failed to make this specific objection at trial, this argument is waived. See *Fulbright v. State*, 194 Ga. App. 827, 828 (3) (392 SE2d 298) (1990). Moreover, Powell's reliance on *Wade v. State*, 197 Ga. App. 464, 466 (2) (398 SE2d 728) (1990), as prohibiting the introduction of evidence during a demonstration by a witness, is misplaced. *Wade* involved a demonstration by the prosecutor during closing arguments. It is well-settled that a prosecutor cannot inject matters not in evidence into final argument. See *Williams v. State*, 254 Ga. 508, 510 (3) (330 SE2d 353) (1985). The demonstrations here were not conducted as part of closing argument, but conducted by witnesses in conjunction with their testimony as a means of illustrating the type of shaking involved in shaken infant syndrome. Defense counsel had ample opportunity after the demonstrations to point out the physical differences between the doll and the real child, which he did. Defense counsel also had the opportunity to inquire into the number of oscillations and the level of shaking involved in the actual occurrence versus the demonstrations, which he failed to do. We note that we have considered the holding in *United States v. Gaskell*, 985 F2d 1056 (11th Cir. 1993), in which a demonstration of shaken baby syndrome was found to be unfairly prejudicial, but are not convinced that it requires a different result here. In *Gaskell*, unlike this case, defense counsel specifically objected to the degree of force used in the demonstration; the witness said he based his presentation on a dem-

onstration by a police officer whose knowledge was derived from a father in another case; the witness admitted he displayed a greater degree of force than that required to produce shaken baby syndrome; Gaskell had admitted shaking the child, though for resuscitation purposes, making the issue of the amount of force actually used critical; and, the conviction was not reversed solely on the demonstration, but also on two other errors in the trial of the case. We find the holding in *State v. Candela*, 929 SW2d 852 (Mo. App. 1996), more persuasive. In *Candela*, the court recognized the trial court's broad discretion in admitting demonstrative evidence and stated that the trial court did not abuse that discretion in allowing a physician to shake a rag doll to illustrate the type of shaking generally involved in shaken impact syndrome, where the defendant was given ample opportunity to show the dissimilarity between the doll and the child. Id. at 867 (V).

2. Powell argues the evidence was insufficient to support her convictions because Dr. Goo did not testify that shaken infant syndrome was the only possible cause of the injuries; Dr. Drack did not "think" the fall from a swing could have caused the injuries; Dr. Drack did not ever state that shaken infant syndrome was the cause of the child's injuries; and Dr. Petronio never excluded the possibility that the back and forth movement involved in shaking could have been caused by the swing, and stated that a skull fracture can result from a low-distance fall.

Despite these alleged shortcomings, there was sufficient evidence to support the guilty verdicts. Dr. Goo testified that the child's injuries resulted from being shaken and beaten, and that the injuries were "absolutely not" consistent with a fall from a swing. Dr. Drack testified that hemorrhaging of the eye can be caused by severe head trauma, shaking and sudden impact injuries. She added that retinal folds mainly occur where the child has been shaken, and that she did not think that a fall alone could have caused the hemorrhaging or the folds. Finally, Dr. Petronio testified that "the only mechanism" whereby children suffer the pattern of injury seen in this case is from violent shaking followed by an impact. Petronio added that he would not expect the injuries to result from a fall from a swing and that he had no doubt that the child was shaken violently. "On appeal of criminal convictions, we do not weigh the evidence or determine the credibility of witnesses; these are jury functions. When the jury has considered the evidence and made its finding, then on appeal the evidence is construed in favor of the jury's verdict. On review of a verdict of guilty, we merely determine whether the evidence is sufficient from which a rational trier of fact could conclude beyond a reasonable doubt that appellant committed the offense[s] as charged." (Citations and punctuation omitted.) *Cornell v. State*, 222 Ga. App. 476 (474

SE2d 634) (1996). A rational trier of fact could have found Powell guilty of aggravated assault and simple battery. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Judgment affirmed. *Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 2, 1997 —
RECONSIDERATION DENIED JUNE 18, 1997 — 
 Before Judge Flake.

*Bruce S. Harvey, David S. West*, for appellant.

*J. Tom Morgan, District Attorney, Thomas S. Clegg, Robert M. Coker, Sheila A. Connors, Assistant District Attorneys*, for appellee.