## S91A0197. ZANT v. FOSTER.
## S91A0198, S91A0199. FOSTER v. THE STATE; and vice versa.
### (406 SE2d 74)

CLARKE, Chief Justice.

In 1987, Timothy Tyrone Foster was convicted and sentenced to death by a jury in Floyd County. We affirmed. *Foster v. State,* 258 Ga. 736 (374 SE2d 188) (1988) (cert. denied 109 SC 2110). Foster filed a petition for writ of habeas corpus in the superior court of Butts County, claiming, inter alia, that he is mentally retarded. According to the briefs filed in this case, the habeas court conducted a hearing on the retardation issue, determined that there was a "genuine issue" of retardation, and "remanded" the case to Floyd County for a jury trial on the issue of Foster's alleged mental retardation, following the procedure set out in *Fleming v. Zant,* 259 Ga. 687 (4) (386 SE2d 339) (1989).

The case is now in this court on interlocutory appeal from the Floyd County Superior Court to resolve questions concerning the procedure to be followed at the mental-retardation trial.

1. In 1982, the legislature enacted a law creating, for the first time in this state, a verdict of guilty but mentally ill. Ga. L. 1982, p. 1476, codified at OCGA § 17-7-131. As originally defined, the verdict included not only mental illness, but also mental retardation. See, e.g., *Spraggins v. State,* 258 Ga. 32 (1) (364 SE2d 861) (1988) (quoting the statutory definition of "mental illness" and holding that Spraggins' mental-retardation evidence entitled him "to jury instructions on the possible verdict of guilty but mentally ill.") After *Spraggins* was decided, the legislature revised OCGA § 17-7-131 to split the former definition of "mentally ill" in two, now defining "mentally retarded" separately from "mentally ill," see OCGA § 17-7-131 (a), and also providing explicitly that a defendant found guilty but mentally retarded may not be sentenced to death. OCGA § 17-7-131 (j).

The petitioner in *Fleming v. Zant,* supra, had been tried when Georgia law made no provision for an explicit jury finding of mental illness or retardation. The issue of Fleming's possible mental retardation was not presented to his sentencing jury, and the jury did not know, for example, that on the basis of his mental retardation Fleming had been awarded social security disability benefits. In Division 3

of our opinion, we held that, based on the "consensus" in this state evidenced by the enactment of OCGA § 17-7-131 (j), "the execution of the mentally retarded constitutes cruel and unusual punishment" under our Georgia Constitution. Id. at 690.

In Division 4 of *Fleming*, we outlined the procedure to be followed to give effect to our constitutional ruling in Division 3.

2. The district attorney argues that the "remand" procedure provided for in *Fleming* is unconstitutional, citing *Newsome v. Black*, 258 Ga. 787 (374 SE2d 733) (1989). *Fleming*, however, does not provide for a "remand." It provides that "a writ shall be granted." *Fleming v. Zant*, supra at 691. The proceedings in the Floyd Superior Court are separate proceedings following the grant of the writ by the habeas corpus court.

3. We agree with the attorney general that Warden Zant is not properly a party to the proceedings in the Floyd Superior Court. These proceedings are not a "continuation" of the habeas proceedings, but are separate proceedings in another county. Cf. *Wiggins v. Lemley*, 256 Ga. 152 (345 SE2d 584) (1986).

4. The purpose of the *Fleming* trial on the issue of retardation is to give the defendant essentially the same opportunity to litigate the issue of his mental retardation as he would have had if the case were tried today, with the benefit of the OCGA § 17-7-131 (j) death-penalty exclusion. Thus, we agree with the trial court that Foster has a right to appointed counsel for the retardation trial, as well as other rights that generally "would . . . have accrued to defendant because of his status as an accused during his initial trial." Trial Court's August 10, 1990 order at p. 9. However, we conclude, contrary to the trial court, that the mental-retardation trial jury should be selected in the same manner as a death-penalty criminal trial jury, including sequestration, and that while the state may cross-examine Foster if he testifies, the state may not call Foster for cross-examination in the first instance.

In addition, while we agree that the issue to be decided is whether or not Foster is mentally retarded, we disagree with the court's pretrial order excluding all evidence of the underlying crime or Foster's subsequent escape attempt. Although a trial court may exclude relevant evidence

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence,

*Hicks v. State*, 256 Ga. 715, 720-721 (352 SE2d 762) (1987), the pretrial ruling at issue sweeps too broadly and excludes evidence which

may be highly probative of Foster's mental abilities and materially relevant to the question of whether or not he is mentally retarded.

The pretrial order at issue here does not demonstrate that the trial court exercised its discretion to determine which evidence may be excluded because its relevance is outweighed by the danger of unfair prejudice. On remand, we direct the trial court to exercise its discretion in this regard.

5. Foster bears the burden of proving his mental retardation by a preponderance of the evidence. *Fleming*, supra at 691 (4). *Spivey v. State*, 253 Ga. 187, 188-189 (319 SE2d 420) (1984), holds otherwise as to the question of guilty but mentally ill under OCGA § 17-7-131 (c) (3). This case deals with retarded persons, not persons guilty but mentally ill. The issue in this case arises in the sentencing phase in death penalty cases. Guilty but mentally ill is a guilt or innocence issue. This case arises under our holding in *Fleming*. Because of these differences, it is not necessary here to reconsider the holding in *Spivey*.

6. The court did not err by granting the state's motion for psychological evaluation of Foster. See *Ingram v. State*, 253 Ga. 622 (14) (323 SE2d 801) (1984).

*Judgment affirmed in part, reversed in part and remanded. All the Justices concur, except Smith, P. J., who dissents.*

Smith, Presiding Justice, dissenting.

I dissent to Division 5 of the majority opinion and to the judgment because I am opposed to reducing the standard of proof required of a convicted murderer who asserts mental retardation in an attempt to limit his punishment.

The majority holds that under *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989), a defendant who claims to be mentally retarded in a death-penalty sentencing hearing must only show that he is retarded by a preponderance of the evidence. The problem with the majority's reasoning is that it conflicts with our statutory standards of proof for verdicts of insanity, and guilty but mentally retarded, and guilty but mentally ill. See OCGA § 17-7-131 and *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984).

This case deals with the sentencing phase of a death-penalty case. As such, the majority states that the purpose of the trial on the mental retardation issue is to give the defendant, "essentially the same opportunity to litigate the issue of his mental retardation as he would have had if the case were tried today, with the benefit of the OCGA § 17-7-131 (j) death-penalty exclusion." Under OCGA § 17-7-131, the burden of persuasion of mental illness or mental retardation is on the defendant and must be proved beyond a reasonable doubt. OCGA § 17-7-131 (c) (3) provides:

> The defendant may be found "guilty but mentally retarded" if the jury, or court acting as trier of facts, finds *beyond a reasonable doubt* that the defendant is guilty of the crime charged and is mentally retarded. . . .[1] [Emphasis supplied.]

The U. S. Supreme Court has approved provisions that a defendant must prove mental illness beyond a reasonable doubt, *Patterson v. New York*, 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977), and that a state may require a criminal defendant to prove his insanity beyond a reasonable doubt. *Rivera v. Delaware*, 429 U. S. 877 (97 SC 226, 50 LE2d 160) (1976).

Mental retardation is a lesser debilitation than mental illness or insanity, and may be readily feigned. *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991). As pointed out in *Stripling*, supra, a defendant seeking to assert mental illness often attempts to "make himself appear more mentally ill than he probably is." A preponderance of the evidence rule compounds the difficulty that sentencing juries face, requires triers of fact to make virtually impossible determinations, and opens the courts to a potential avalanche of appeals. Our courts will not only have to deal with habeas actions arising out of *Fleming* assertions, but they will also have to review the mental retardation trials on a case by case basis to determine the sufficiency of the evidence.

Finally, I must dissent to the Court's interference with the legislative function. In *Jones v. Swett*, 244 Ga. 715, 717 (261 SE2d 610) (1979), we held:

> Once the court interprets a statute, that interpretation becomes an integral part of the statute and any subsequent "reinterpretation" would be no different from a judicial alteration of language placed in the statute by the General Assembly itself. [Cits.]

In *Spivey*, supra, we interpreted OCGA § 17-7-131 to mean that mental illness and mental retardation must be proved by the defendant beyond a reasonable doubt. The legislature, at that time could have rewritten the statute if our holding misinterpreted its intent. It

---

[1] Some commentators argue that the "beyond a reasonable doubt" standard applies only to the state's proof of the crime, and not to the defendant's proof of his claim of mental retardation. However, the state's burden of proof in criminal matters is well known and it would serve no purpose to merely repeat that standard and exclude its application to the mental retardation claim. "It is a well settled canon of statutory construction that statutes are presumed to be enacted by the legislature with knowledge of the existing law." *Hart v. Owens-Illinois*, 250 Ga. 397, 400 (297 SE2d 462) (1982). It is more plausible that the legislature would have specifically set out a preponderance of the evidence standard if it had so intended.

did not. By adopting a preponderance of the evidence standard here, under the guise of *Fleming*, supra, we preempt the function of the legislature and substitute the will of the Court for the will of the people as reflected by their elected representatives. I cannot agree.

DECIDED JULY 3, 1991 —
RECONSIDERATION DENIED JULY 24, 1991.

*Stephen F. Lanier, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paula K. Smith, Assistant Attorney General, Brinson, Askew & Berry, Robert M. Brinson,* for The State and Zant.
*Stewart, Melvin & House, J. Douglas Stewart, Benna Kushlefsky,* for Foster.

