S97A0790. MOSHER v. THE STATE.
(491 SE2d 348)

THOMPSON, Justice.

Winston Henry Mosher was convicted of malice murder, kidnapping with bodily injury, and conspiracy to commit theft by taking of an automobile.[1] Although the State sought the death penalty, see *State v. Mosher*, 265 Ga. 666 (461 SE2d 219) (1995) (granted application for interim appeal), a jury recommended life imprisonment. Seeking reversal of his convictions, Mosher challenges an instruction requiring the jury to find mental retardation beyond a reasonable doubt in order to return a verdict of guilty but mentally retarded. He also asserts that the trial court erroneously refused to excuse a juror for cause, and failed to exclude his videotaped confession. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that during the day of December 15, 1992, Mosher and his girl friend, Elizabeth Shepler, had consumed two large bottles of Listerine and several cans of beer.[2] During that evening, the two were at a convenience store in the Jacksonville, Florida area when the 81-year-old-victim, Morris Gilfand, drove up and asked them for directions to Interstate 95. Gilfand stated that he was on his way to Illinois. Shepler responded that her family lived in Ohio and she asked Gilfand for a ride home to Ohio. He agreed, stating that he would like the company. Both she and Mosher got into Gilfand's car. Shepler sat in the front passenger seat; Mosher sat directly behind her and he directed Gilfand onto Interstate 95 northbound. Mosher had four cans of beer

---

[1] The crimes occurred on December 16, 1992. Mosher was indicted on October 1, 1993, and charged with malice murder, felony murder (two counts), kidnapping with bodily injury, aggravated assault, and conspiracy to commit theft by taking of an automobile. The State sought the death penalty. Trial commenced on November 13, 1995, and on November 17, 1995, Mosher was found guilty of malice murder, kidnapping with bodily injury, aggravated assault and conspiracy to commit theft of an automobile. After hearing evidence presented at the sentencing phase, the jury fixed the sentence at life imprisonment. Mosher was sentenced on that day to two consecutive life sentences for murder and kidnapping and to a concurrent term of ten years for conspiracy to commit theft. The aggravated assault conviction merged into the kidnapping. A motion for new trial was filed on November 21, 1995, and amended on April 30, 1996. The motion was denied on June 10, 1996. A notice of appeal was filed on July 5, 1996. The case was docketed in this Court on February 20, 1997, and was orally argued on June 17, 1997.

[2] Shepler testified as a State's witness at trial under a grant of immunity. See *State v. Mosher*, supra.

with him, which he continued to consume as they proceeded north toward Georgia.

At one point, Mosher moved toward the center of the back seat and leaned forward to observe the gas gauge. He remarked to Shepler, "He's got a full tank of gas." After entering Camden County, Georgia, Shepler asked Gilfand to stop the car so that she could relieve herself at the side of the road. Shepler got out and when she returned to the car Mosher had his right arm around Gilfand's neck, and was hitting him in the face. She exclaimed, "My God, you're going to kill this man." Mosher told her to "shut up" and find an object that he could use to hit the victim. Shepler opened the glove compartment and took out a flashlight, but Mosher directed her to hand him a screwdriver which was also inside. After ordering Shepler to leave the car, Mosher pulled Gilfand out through the driver's door and dragged him into the woods nearby. Shepler decided to drive off in Gilfand's car and just as she was about to do so, a police car pulled up behind.

A Camden County deputy sheriff stopped to assist what he believed to be a disabled motorist. The deputy approached the vehicle and observed a pair of damaged eyeglasses and a bloody Phillips-head screwdriver on the ground beside the car. Seeing a woman in the front seat, the officer tapped on the window and inquired if there was a problem. Shepler did not respond; she looked at the officer and then looked beyond him toward the woods. The deputy returned to the patrol car and radioed for assistance. He then observed Mosher coming out of the woods. The deputy requested identification from Mosher, whereupon he noticed a small fresh wound on Mosher's face, and wet blood on both his hands. Back-up officers arriving on the scene searched the nearby woods. They found the victim's beaten body in the woods approximately 54 feet from his car. He was pronounced dead at the scene.

Forensic evidence showed that Gilfand died as a result of asphyxia associated with blunt force trauma to his head and neck. His jaw bone was broken in several pieces, and his left ear was almost severed. Several wounds were consistent with having been inflicted by a Phillips-head screwdriver, and other head injuries were consistent with stomping by a heavy shoe or boot. Gilfand's blood type matched blood found on the screwdriver, and on Mosher's hands, boots, and jeans.

Mosher admitted in a custodial statement to police that he lost his temper and kicked Gilfand repeatedly. He stated: "I don't know if that is the cause of death, but it probably was because I had boots on."

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find

Mosher guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. It is asserted that the court erred in failing to disqualify a potential juror for cause under the rule applicable to law enforcement officers in *Hutcheson v. State*, 246 Ga. 13 (268 SE2d 643) (1980).

During voir dire examination, the juror stated that he was presently employed by the Federal Law Enforcement Training Center, a bureau of the Treasury Department, as a law enforcement instructor assigned to the firearms division. In that capacity, he is neither a sworn officer nor does he have arrest powers. Previously, the juror had served as a dispatcher in a California police department, as a sworn officer with a police department in the central Pacific, and in the United States Army Military Police Corps as a law enforcement officer with military arrest powers. The juror stated that he would follow the court's instructions concerning the presumption of innocence and that he could vote for acquittal if the evidence failed to establish guilt beyond a reasonable doubt.

In *Hutcheson*, supra, we held that a full-time police officer who is challenged for cause in a criminal case must be excused. But we have refused to extend the automatic disqualification rule in *Hutcheson* to those less connected with law enforcement than full-time police officers. See *Denison v. State*, 258 Ga. 690 (4) (373 SE2d 503) (1988) (no assumption of bias on the part of sworn deputies employed by the sheriff); *Wilson v. State*, 250 Ga. 630 (4) (a) (300 SE2d 640) (1983) (no assumption of bias on the part of inactive reserve and auxiliary police); *Jordan v. State*, 247 Ga. 328 (6) (276 SE2d 224) (1981) (former police officers currently working at state correctional facility not subject to challenge for cause).

In a closely analogous case, the Court of Appeals recently upheld a trial court's refusal to disqualify for cause a juror who was employed by the Georgia Bureau of Investigation as an instructor and who taught others how to use the information system to access criminal histories. *Woods v. State*, 224 Ga. App. 52 (479 SE2d 414) (1996). As in the present case, the juror's work was instructional, not investigatory or prosecutorial, he was not a sworn law enforcement officer, and he stated that he could be impartial. Following the rationale in *Woods*, supra, and other cases cited therein, we hold that the trial court correctly refused to strike the juror for cause. Compare *Beam v. State*, 260 Ga. 784 (2) (400 SE2d 327) (1991) (juror who was an employee of the same district attorney who prosecuted the defendant should have been excused for cause); *Harris v. State*, 255 Ga. 464 (2) (339 SE2d 712) (1986) (refusal to strike for cause a state patrolman on the jury panel amounts to reversible error).

3. Mosher challenges the admissibility of a videotaped confession

given to police as violative of the rule of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), and *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986).

While in custody and awaiting trial Mosher conveyed a message through a jail employee that he wanted to "tell his story" to the officers who had investigated the case. In response to Mosher's request, the two officers arranged for an interview to be recorded on videotape. Mosher's counsel was not present. Preliminarily, Mosher was reminded by the officers that he had previously invoked his right to counsel, and they urged him to have counsel present at the interview. Mosher responded that he understood his right to counsel, that he told his lawyer what he intended to do, and despite counsel's advice to the contrary, he insisted on explaining the events of the murder "from the beginning to the end, the truth." He emphatically declined to have counsel present at the interview. Mosher also confirmed on tape that it was *he* who had initiated the request for the interview, and that the officers had not sought contact with him. *Miranda* warnings were administered and carefully explained. Mosher confirmed that he understood his rights and that he had not been coerced.

Under *Edwards*, authorities may not interrogate a suspect in custody who has requested an attorney, unless counsel is made available to the accused *or* the accused initiates further communication with the police. The analysis rested on the Fifth Amendment. In *Jackson*, the same rule was applied on Sixth Amendment grounds to a post-arraignment confession by a defendant who had been formally charged with a crime and had requested appointment of counsel. Since Mosher initiated the conversation, and knowingly and intelligently waived his right to counsel, there was no violation of his Fifth or Sixth Amendment rights. The trial court properly denied a motion to exclude the videotaped statement.

4. During the guilt-innocence phase of the trial, the court charged that the defendant is presumed to be innocent, that the burden of proof of guilt and of all the essential elements of the crime rests upon the State, and the jury may not convict unless and until the State proves each element of the crime beyond a reasonable doubt. The court also instructed that "[t]here is no burden of proof upon the defendant whatever, and the burden never shifts to the defendant to prove his innocence." In a separate section of the charge, the jury was instructed in the language of OCGA § 17-7-131 (c) (3) that, "if you believe beyond a reasonable doubt that the defendant is guilty of an offense and was mentally retarded at the time of the commission of the offense, then your verdict would be guilty but mentally retarded."

Although Mosher concedes that this Court has upheld the

beyond a reasonable doubt standard of OCGA § 17-7-131 (c) (3), *Williams v. State*, 265 Ga. 351 (3) (455 SE2d 836) (1995); *Burgess v. State*, 264 Ga. 777, 786 (23) (450 SE2d 680) (1994), he nevertheless asserts that the standard violates due process under the rationale of *Cooper v. Oklahoma*, 517 U. S. ___ (116 SC 1373, 134 LE2d 498) (1996).

In *Cooper,* the Supreme Court struck down on due process grounds an Oklahoma statute which required an accused to prove incompetency to stand trial by clear and convincing evidence. Although the court found it appropriate to place the burden of proof on the accused, it rejected a standard of proof greater than a preponderance of the evidence because a heightened standard created a significant risk that an incompetent defendant would wrongfully be found competent to stand trial. The ruling rested on the premise that, "an erroneous determination of competence threatens a 'fundamental component of our criminal justice system' — the basic fairness of the trial itself." (Citation omitted.) *Cooper,* supra 116 SC at 1382. The court reiterated the long-standing principle that " 'the criminal trial of an incompetent defendant violates due process.' [Cits.]" *Cooper,* supra 116 SC at 1376.

However, there is a material difference between a competence inquiry and a determination of mental retardation. A defendant's mental competency to stand trial is determined by a special jury under the provisions of OCGA § 17-7-130, *Stripling v. State*, 261 Ga. 1 (3) (b) (401 SE2d 500) (1991), while the proceedings to determine insanity or mental incompetency at the time of the crime are governed by OCGA § 17-7-131. And under OCGA § 17-7-131 (j), a defendant is relieved from the death penalty if it is established that he is "mentally retarded" within the statutory definition of OCGA § 17-7-131 (a) (3).[3]

The United States Supreme Court approved on due process grounds a state statute requiring a criminal defendant pleading insanity to prove insanity beyond a reasonable doubt. *Leland v. Oregon*, 343 U. S. 790 (72 SC 1002, 96 LE2d 1302) (1952). In *Patterson v. New York*, 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977), the court

---

[3] In *Penry v. Lynaugh*, 492 U. S. 302 (109 SC 2934, 106 LE2d 256) (1989), the Supreme Court determined that while mental retardation is a factor that may lessen a defendant's culpability for a capital offense, the Eighth Amendment to the U. S. Constitution does not preclude the execution of a mentally retarded person convicted of a capital offense simply by virtue of that person's mental retardation alone. Id., 492 U. S. at 340. In *Fleming v. Zant*, 259 Ga. 687 (3) (386 SE2d 339) (1989), this Court recognized that federal constitutional standards represent the minimum protections that must be afforded the citizens of Georgia. We determined that "under the Georgia Constitution, the execution of the mentally retarded constitutes cruel and unusual punishment" Id. at 690. OCGA § 17-7-131 (j) was enacted in response to the consensus of citizens that "execution of mentally retarded offenders makes no measurable contribution to acceptable goals of punishment." *Fleming*, supra at 690.

upheld a New York law which placed the burden on a defendant to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the crime of murder to manslaughter. In so ruling, the court acknowledged that it is normally " 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' [Citations omitted.]" *Patterson*, supra, 432 U. S. at 201. Likewise in *Leland*, supra, 343 U. S. at 799, the court refused to interfere with a State's imposition of policy with respect to the burden of proof on the issue of sanity since it could not be said "that policy violates generally accepted concepts of basic standards of justice."

We applied the rationale of *Patterson*, supra, in *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984), and upheld as constitutional the requirement under OCGA § 17-7-131 (c) (2) that a defendant prove mental illness beyond a reasonable doubt. The same burden of persuasion and standard of proof is required of a defendant in proving mental retardation. OCGA § 17-7-131 (c) (3). In deciding whether that procedural burden violates due process, we look to whether it offends a fundamental principle of justice. *Cooper*, supra 116 SC at 1383. Clearly a fundamental right was implicated in *Cooper* — an incompetent criminal defendant's fundamental right not to stand trial when it was more likely than not that he lacked the capacity to understand the proceedings against him and to communicate effectively with his counsel. The procedural burden implicated in the present case bears on sentencing — if a criminal defendant proves his mental retardation beyond a reasonable doubt, a death sentence will not be imposed and he will instead be sentenced to life imprisonment.[4] Applying the rationale of *Patterson*, supra and *Leland*, supra, we find no impediment on due process grounds to the statutory requirement that mental retardation must be proven beyond a reasonable doubt. Accord *Williams*, supra; *Burgess*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 6, 1997 —
RECONSIDERATIONS DENIED NOVEMBER 3, 1997.

*Randall Clark, Gilbert, Harrell, Gilbert, Sumerford & Martin,*

---

[4] Since the jury declined to recommend a sentence of death, Mosher received sentences of life imprisonment — the same penalty he would have received if he had been found guilty but mentally retarded.

*Lisa S. Godbey,* for appellant.

*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Angelica M. Woo, Assistant Attorney General,* for appellee.

*Michael Mears,* amicus curiae.