## S97A1496. TURPIN v. HILL.
(498 SE2d 52)

HUNSTEIN, Justice.

Warren Lee Hill, Jr. was sentenced to death in 1991 for the 1990 murder of a fellow prison inmate. Although Hill was tried three years after the effective date of OCGA § 17-7-131 (c) (3) and (j), which authorizes a verdict of guilty but mentally retarded and bars the execution of those found to be mentally retarded, no issue was raised by Hill regarding any alleged mental retardation at trial or on appeal. His conviction was affirmed by this Court. *Hill v. State*, 263 Ga. 37 (427 SE2d 770) (1993). Hill then filed a petition for writ of habeas corpus contending, inter alia, that his death sentence should be set aside on the ground that he is mentally retarded and thus should not be subject to execution;[1] Hill also contended that trial counsel was ineffective for failing to investigate properly and raise his alleged mental retardation at trial. The State raised the defense of procedural default. The habeas court ruled that because the execution of a mentally retarded person violates the cruel and unusual punishment provision in the Georgia Constitution, as held in *Fleming v. Zant*, 259 Ga. 687, 690 (386 SE2d 339) (1989), the issue of mental retardation was not subject to procedural default. The habeas court then applied the standards set forth in *Fleming v. Zant*, which were promulgated to review mental retardation claims that arose in cases before the effective date of OCGA § 17-7-131, and found that Hill had presented sufficient credible evidence of mental retardation. The habeas court granted Hill a limited writ of habeas corpus for the purpose of conducting a jury trial on the issue of his mental retardation. The State appeals. For the reason set forth below, we reverse.

1. The State properly filed a direct appeal from the habeas court's order. OCGA § 9-14-52 (c); see *Zant v. Pitts*, 263 Ga. 529 (436 SE2d 4) (1993).

2. The record reveals that appellee submitted affidavits directly to the habeas court after noticing his intent to rely upon the affidavits, see OCGA § 9-14-48 (c); the affidavits were disputed as to their merits by the State; and the habeas court has specifically ruled that it considered the affidavits in rendering its order. Therefore, we find no merit in the State's argument that there was no evidence to support the habeas court's order due to appellee's failure, before the order was rendered, to formally tender the affidavits into evidence. The habeas court correctly granted appellee's motion to complete the

---

[1] In support of his application, Hill adduced, inter alia, the affidavit of the psychologist who testified at the sentencing phase of Hill's trial. The psychologist averred that his testimony at trial was based on inadequate information and explained in-depth why the IQ testing he originally used on Hill led to an inaccurate and misleading result.

record on appeal by the addition of these affidavits. Contrary to the State's argument, the record reflects that appellee sufficiently satisfied the statutory requirements for the admissibility of the affidavits, OCGA § 9-14-48 (c), and that the habeas court considered the State's evidence before rendering its order.

3. The State contends the habeas court erred by holding that appellee's mental retardation claim was not subject to procedural default.

(a) Initially, we hold that the State is not precluded from raising this argument. Our review of the record reveals that the State's actions after the challenged ruling did not constitute a waiver by the State of its objection to the habeas court's consideration of the mental retardation claim.

(b) In light of this Court's holding that the execution of the mentally retarded constitutes cruel and unusual punishment under the Georgia Constitution, *Fleming v. Zant*, supra, 259 Ga. at 690, we find no error in the habeas court's consideration of appellee's claim of mental retardation.[2] "In all cases habeas corpus relief shall be granted to avoid a miscarriage of justice." OCGA § 9-14-48 (d). See also *Black v. Hardin*, 255 Ga. 239 (4) (336 SE2d 754) (1985) and *Valenzuela v. Newsome*, 253 Ga. 793 (4) (325 SE2d 370) (1985) (even absent a showing of cause and prejudice, the relief of the writ will remain available to avoid a miscarriage of justice where there has been a substantial denial of constitutional rights).

4. We reverse the habeas court's ruling, however, because we hold that the standards set forth in *Fleming v. Zant*, supra, are not applicable to mental retardation claims raised in cases tried after the effective date of OCGA § 17-7-131 (c) (3) and (j). Our opinion in *Fleming v. Zant* expressly states that it "will not apply to defendants tried after the effective date of the statute." Id., 259 Ga. at 691, n. 4. As discussed in *Burgess v. State*, 264 Ga. 777, 789 (36) (450 SE2d 680) (1994), this Court intended in *Fleming v. Zant* to give defendants tried before the effective date of the statute essentially the same opportunity to litigate the issue of mental retardation as those defendants would have had if the cases were tried with the benefit of the statute. In *Burgess*, supra at 790-791 (36), we declined to apply the standards in *Fleming v. Zant* to a defendant tried after the effective date of OCGA § 17-7-131 (c) (3) and (j) and drew attention to the

---

[2] A habeas court's consideration of this claim affects only the sentencing phase of death penalty cases. To the extent claims of mental retardation are directly raised in habeas corpus proceedings to challenge such guilt-innocence phase issues as intent to commit the charged crime, such claims are waived by failure to assert mental retardation at trial. However, it may be possible to raise such claims indirectly as part of a claim of ineffective assistance of counsel.

different standards between the statute and the *Fleming v. Zant* opinion, specifically, the requirement in the statute that defendants carry the burden of proving their mental retardation beyond a reasonable doubt, as opposed to the holding in *Fleming v. Zant*, supra, 259 Ga. at 691 (4), that requires defendants to bear the burden of proving retardation by a preponderance of the evidence.[3] To apply the *Fleming v. Zant* standards to a defendant tried after the effective date of OCGA § 17-7-131 (c) (3) and (j) would result in disparate treatment of such defendant.[4] Given the explicit language in *Fleming v. Zant* prohibiting its application to defendants tried after the effective date of the statute, we hereby hold that the standards in *Fleming v. Zant* are not applicable to defendants like appellee who were tried when the statutory procedure established by our legislature to effectuate the public policy against the execution of mentally retarded defendants was in force. Upon considered review of this issue, we conclude that our holding to the contrary in *Zant v. Pitts*, supra, 263 Ga. at 529 (ineffective assistance of counsel claim) was misguided and we hereby overrule language to the contrary in that case.

Accordingly, this appeal is reversed and the case is remanded to the habeas court to consider appellee's claim of mental retardation and to determine without intervention of jury whether appellee can establish, under the applicable standard set forth in OCGA § 17-7-131 (c) (3), that he is mentally retarded so as to invoke the bar against execution in OCGA § 17-7-131 (j). See generally *Turpin v. Todd*, 268 Ga. 820 (4), n. 45 (493 SE2d 900) (1997).

*Judgment reversed and case remanded. All the Justices concur, except Fletcher, P. J., who concurs specially and Carley and Thompson, JJ., who dissent.*

FLETCHER, Presiding Justice, concurring specially.

I concur completely in the majority's decision to remand the case to the habeas court for a determination of Hill's claim of mental retardation. However, I would require that Hill establish his claim by a preponderance of the evidence rather than beyond a reasonable doubt. See *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998) (Fletcher, P. J., dissenting).

---

[3] We further note that OCGA § 17-7-131 (c) (3) applies in "all criminal trials in any of the courts of this state," unlike *Fleming v. Zant*, which limits the defense to those defendants who have "presented sufficient credible evidence [of retardation], which must include at least one expert diagnosis of mental retardation." Id., 259 Ga. at 691 (4).

[4] A different result is not required by *Zant v. Foster*, 261 Ga. 450 (406 SE2d 74) (1991), with its language distinguishing between mentally retarded persons and persons guilty but mentally retarded, id. at (5), in that *Zant v. Foster* was a case involving a habeas petitioner sentenced to death who had been tried before the effective date of OCGA § 17-7-131 (c) (3) and (j). We decline to extend its holding beyond the facts in that case.

CARLEY, Justice, concurring in part and dissenting in part.

I concur in Divisions 1, 2, 3 (a) and 4 of the majority opinion and in the judgment of reversal. However, I believe that a claim for habeas relief based upon an allegation of mental retardation is subject to procedural default and that the habeas court erred, therefore, in considering the issue of Hill's alleged mental retardation under any standard. Accordingly, I respectfully disagree with Division 3 (b) of the majority opinion and dissent to the remand for the habeas court's further consideration of Hill's claim of mental retardation.

Although Hill did not raise his alleged mental retardation as a bar to the death penalty at the guilt-innocence phase of the trial, the majority nevertheless concludes that the habeas court is authorized to address that belated claim under the "miscarriage of justice" exception to the principle of procedural default. "In precisely the same vein" as federal law, OCGA § 9-14-48 (d) incorporates this limited "miscarriage of justice" exception into our state habeas corpus statute. *Valenzuela v. Newsome*, 253 Ga. 793, 796 (4) (325 SE2d 370) (1985). Even in death-penalty cases, the United States Supreme Court has "emphasized the narrow scope of the . . . exception." *Sawyer v. Whitley*, 505 U. S. 333, 340 (112 SC 2514, 120 LE2d 269) (1992). Consistent with "the core purpose of the writ — which is to free the innocent wrongfully deprived of their liberty," we have restricted the "miscarriage of justice" exception to "rare" occasions. *Valenzuela v. Newsome*, supra at 796 (4). This restriction is essential to preserve judicial resources and the finality of judgments. *Sawyer v. Whitley*, supra at 338; *Valenzuela v. Newsome*, supra at 796 (4).

> " '[T]he term ["miscarriage of justice"] is by no means to be deemed synonymous with procedural irregularity, or even with reversible error. To the contrary, it demands a much greater substance, approaching perhaps the imprisonment of one who, not only is *not* guilty of the specific offense for which he is convicted, but, further, is not even culpable in the circumstances under inquiry."

(Emphasis in original.) *Gavin v. Vasquez*, 261 Ga. 568, 569 (407 SE2d 756) (1991).

The majority's reliance upon *Fleming v. Zant*, 259 Ga. 687, 690 (3) (386 SE2d 339) (1989) as support for its application of the "miscarriage of justice" exception is misplaced. Contrary to the implication of the majority, the constitutional dimension of an issue raised in a habeas proceeding does not in and of itself demonstrate a "miscarriage of justice." See *Black v. Hardin*, 255 Ga. 239, 240 (5) (336 SE2d 754) (1985). More importantly, however, this Court in *Fleming v. Zant*, supra at 690 (3), expressly *disavowed* any holding "that the

Georgia Constitution prohibits execution of retarded persons per se." Indeed, the holding in *Fleming* was based in significant part upon the relevant *statutory* provision of OCGA § 17-7-131 (j), as a reflection of the will of the people through their elected representatives. *Fleming's* procedure was expressly held inapplicable in those cases where the statute was applicable. *Fleming*, supra at 691 (4), fn. 4. This case is controlled by OCGA § 17-7-131 (j), not by *Fleming*. Thus, in this case, the *statute* is the standard which reflects the will of the people of Georgia and their consensus on what constitutes unconstitutional cruel and unusual punishment. See *Burgess v. State*, 264 Ga. 777, 790 (36) (450 SE2d 680) (1994) (holding that "[t]here is *no constitutional impediment* to th[e] statutory requirement that the defendant meet a beyond a reasonable doubt standard as to the issue of mental retardation." (Emphasis supplied.)).

> The public policy evidenced by the death-penalty preclusion of OCGA § 17-7-131 (j) is that it constitutes cruel and unusual punishment to execute *only* those defendants who have met the burden of proving their mental retardation beyond a reasonable doubt *at the guilt-innocence phase* in accordance with OCGA § 17-7-131 (c) (3).

(Emphasis supplied.) *Burgess v. State*, supra at 790 (36). There is no contention that Hill could not have attempted to raise his mental retardation as a bar to the death penalty at the guilt-innocence phase of his trial in accordance with the statute. However, he made no attempt to do so. Under the testimony of his own expert at the sentencing phase, Hill was *not* mentally retarded, but was merely on the "borderline." If Hill was not mentally retarded, then, as a matter of Georgia statutory and constitutional law, the death penalty would not constitute cruel and unusual punishment. In *Burgess*, this Court correctly distinguished OCGA § 17-10-60 et seq., which provides a post-conviction procedure for obtaining a stay of execution based upon mental incompetency.

Moreover, the "miscarriage of justice" exception in the setting of capital punishment is, as previously noted, "a very narrow exception, and . . . to make it workable it must be subject to determination by relatively objective standards." *Sawyer v. Whitley*, supra at 341. Mental retardation is not the kind of objective, easily determined condition of eligibility for the death penalty contemplated by *Sawyer v. Whitley*, supra at 346-347. To the contrary, the determination of mental retardation as defined by OCGA § 17-7-131 (a) (3) is complex. Furthermore, unless mental retardation is raised by the defendant and proved beyond a reasonable doubt at the guilt phase, evidence thereof is merely "additional mitigating evidence," the absence of

which at the sentencing phase would not constitute a "miscarriage of justice." *Sawyer v. Whitley*, supra at 347. See also *Burgess v. State*, supra at 791 (36).

Even if the majority were generally correct in applying the "miscarriage of justice" exception to claims of mental retardation, there certainly is no miscarriage of justice under the circumstances of this case. As previously noted, Hill's trial counsel obtained evidence from a licensed clinical psychologist that Hill is not mentally retarded, but is on the "borderline." Hill's trial counsel could reasonably have concluded that if this evidence had been presented at the guilt-innocence phase it probably would not have resulted in a verdict of "guilty but mentally retarded" so as to preclude the imposition of the death penalty as a matter of law pursuant to OCGA § 17-7-131 (j). In light of the strong evidence presented at Hill's sentencing trial that he is *not* mentally retarded, the concept of "miscarriage of justice" should not be used as the basis for authorizing a relitigation of the issue and second-guessing of trial counsel's strategic choice.

That the effect of the majority opinion is a relitigation of the issue of mental retardation is apparent from the first footnote. That footnote indicates that Hill's petition is based in part on evidence from the expert psychologist which is impeaching of his own trial testimony. Such evidence would not even furnish a basis for granting a motion for new trial. See, e.g., *Weems v. State*, 268 Ga. 142, 143 (1) (485 SE2d 767) (1997); *Ruger v. State*, 263 Ga. 548, 551 (2) (c) (436 SE2d 485) (1993). Surely this evidence should not provide a basis for subsequent habeas relief when OCGA § 9-14-48 (d) imposes the stricter requirements of cause and prejudice or miscarriage of justice. In either instance, a contrary rule would encourage a lack of diligence by litigants, counsel, and expert witnesses on the first trial, would cause delay in the administration of justice, and would result in additional time, labor, and expense of further litigation. See *Turner v. State*, 44 Ga. App. 346, 348-349 (3) (161 SE 626) (1931). Therefore, in my opinion, Hill should not be permitted to support his petition with evidence which is merely impeaching or otherwise to relitigate the issue of mental retardation.

Under today's holding, every defendant facing the possibility of the death penalty may, with this Court's blessing, choose not to raise the issue of mental retardation as a bar to the death penalty at the guilt-innocence phase, in order to delay the determination thereof until a habeas petition is filed. Every such defendant who was tried after the effective date of OCGA § 17-7-131 (j) and sentenced to death is now automatically entitled to litigate or even to relitigate the issue of mental retardation at a habeas hearing. In my opinion, this is not one of those "rare" occasions where such a result should be authorized. Therefore, I dissent to the remand for any further considera-

tion of the mental retardation claim.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED FEBRUARY 23, 1998 —
RECONSIDERATION DENIED APRIL 2, 1998.

*Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,* for appellant.

*Stephen C. Bayliss,* for appellee.

*Daniel J. Porter, District Attorney, Gwinnett Circuit, Peter J. Skandalakis, District Attorney, Coweta Circuit, Kermit N. McManus, District Attorney, Conasauga Circuit, Alvin G. Hollingshed,* amici curiae.