## S98P1142. STEPHENS v. THE STATE.
### (509 SE2d 605)

SEARS, Justice.

William Kenny Stephens was tried for malice murder and three counts of aggravated assault in 1980. He was convicted of all counts and sentenced to death for the murder, and his convictions and sentences were affirmed by this Court.[1] In 1988, the United States Court of Appeals for the Eleventh Circuit vacated the death sentence because trial counsel failed to adequately investigate and present evidence of Stephens's mental health problems.[2] On the Eleventh Circuit's remand, a second sentencing trial was held in 1989. At that trial, the jury recommended a death sentence after finding beyond a reasonable doubt the following statutory aggravating circumstances: the offense of murder was committed while the offender was engaged in the commission of an aggravated battery;[3] the offense of murder was outrageously and wantonly vile, horrible and inhuman, in that it involved depravity of mind of the defendant and an aggravated battery to the victim;[4] and the offense of murder was committed against a peace officer while engaged in the performance of his official duties.[5] Because the trial court erroneously instructed the jury in the 1989 sentencing trial that Stephens had to prove his alleged mental retardation beyond a reasonable doubt, we reverse.[6]

---

[1] *Stevens v. State*, 247 Ga. 698 (278 SE2d 398) (1981) (Stephens's name is misspelled in the style of this case).

[2] *Stephens v. Kemp*, 846 F2d 642 (11th Cir. 1988).

[3] OCGA § 17-10-30 (b) (2).

[4] OCGA § 17-10-30 (b) (7).

[5] OCGA § 17-10-30 (b) (8).

[6] The crimes occurred on January 24, 1979. Stephens was indicted for malice murder and three counts of aggravated assault on January 30, 1979. He was convicted of all counts by a jury on February 15, 1980. In addition to the death sentence for the murder, Stephens received three consecutive twenty-year sentences for the aggravated assaults. After Stephens's death sentence was vacated by the Eleventh Circuit, the State filed a notice of intent to seek the death penalty on October 10, 1989. Stephens's sentencing trial was held November 14-22, 1989, and the jury recommended a death sentence for the murder on November 22, 1989. Stephens filed a motion for new trial on November 29, 1989, and a supplemented motion for new trial on June 29, 1990, which was denied on November 6, 1990. Stephens filed a notice of appeal to this Court on November 26, 1990. The case was remanded back to the trial court at the State's request for a hearing to determine the Attorney General's role in ordering a state physical and neurological examination of the defendant. The hearing was held on February 10, 1998, and the case was re-docketed by this Court on April 16, 1998. The case was orally argued on July 13, 1998.

Viewed in the light most favorable to the prosecution, the evidence showed that Stephens was arrested for DUI and driving without a license in January 1979. The police suspected that Stephens had been involved in the burglary of a store where several guns had been stolen, and they released Stephens when he promised to return with information about who had committed the burglary. After two days, Stephens had failed to return as promised, and the police began looking for him. On January 24, 1979, Investigator Larry Stevens of the Richmond County Sheriff's Department, the officer who was investigating the burglary, stopped Stephens's car. While Investigator Stevens was sitting in his police car, Stephens got out of his vehicle with a high-powered rifle and fired through the windshield of the police car, shattering Investigator Stevens's right forearm. The officer, who was right-handed, managed to retrieve his revolver and fired several wild left-handed shots through his car at Stephens. Stephens fired a second time and hit the officer in the right side, seriously wounding him. Stephens then walked around to the rear of the police car, raised his rifle to shoulder height, and fired a third shot through the rear window. The officer was hit in the chest and killed. A postal worker saw Stephens walk to the rear of the police car and fire the last shot. Stephens then led several other officers on a high-speed chase, and was arrested after a shootout. While in custody, Stephens made several incriminating statements.

1. We find that the evidence adduced at Stephens's sentencing trial was sufficient to enable any rational trier of fact to find the existence of the statutory aggravating circumstances beyond a reasonable doubt.[7]

2. OCGA § 17-7-131 (j) prohibits the execution of a defendant who proves that he or she is mentally retarded. Mental retardation was one of Stephens's defenses at his 1989 sentencing trial. His counsel presented expert testimony that Stephens was mentally retarded, as well as evidence that Stephens's IQ ranged from 62-72 on several tests, and that he had failed three grades before leaving school in the fifth grade. A dispute arose over the proper burden of proof with regard to Stephens's mental retardation because OCGA § 17-7-131 (c) (3) specifies that a defendant must prove that he or she is mentally retarded beyond a reasonable doubt in the guilt-innocence phase.[8] Since the Eleventh Circuit upheld Stephens's convictions, no guilt/innocence phase was to be held in 1989; Stephens faced a sentencing trial only. Furthermore, because OCGA § 17-7-131 (j) was not

---

[7] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also OCGA § 17-10-35 (c) (2).

[8] OCGA § 17-7-131 (c) (3); *Mosher v. State,* 268 Ga. 555, 558-560 (4) (491 SE2d 348) (1997).

enacted until 1988, Stephens did not have the benefit of the statutory prohibition against executing the mentally retarded available to him in 1980 at his first trial. In the 1989 sentencing trial, the trial court charged the jury that Stephens had the burden of proving his mental retardation beyond a reasonable doubt. Stephens objected, claiming that the burden of proof for his mental retardation claim should have been a preponderance of the evidence.

It is the public policy of Georgia, as evidenced by OCGA § 17-7-131 (j), that it is cruel and unusual punishment to execute "those defendants who have met the burden of proving their mental retardation beyond a reasonable doubt *at the guilt-innocence phase* in accordance with OCGA § 17-7-131 (c) (3)."[9] A jury finding that a capital defendant is "guilty but mentally retarded" requires that the trial court sentence the defendant to life imprisonment.[10] If a defendant fails to prove in the guilt-innocence phase that he is guilty but mentally retarded, the issue of the defendant's mental retardation is no longer conclusive to his sentence, but becomes merely one of the mitigating factors that the jury can consider in the penalty phase.[11] The defendant who fails to prove mental retardation in the guilt-innocence phase is not entitled to a charge in the penalty phase on any burden of proof with regard to mental retardation.[12]

In *Fleming v. Zant*,[13] this Court held that the statutory prohibition against executing those defendants who can prove their mental retardation applies to capital defendants who were tried before the enactment of OCGA § 17-7-131 (j).[14] The Court established a procedure where, once a habeas court has determined that there has been a prima facie showing of mental retardation, a jury trial is held to determine whether the petitioner is mentally retarded so as to preclude his execution. At this trial, the petitioner bears the burden of proving his mental retardation *by a preponderance of the evidence.*[15] This procedure is designed to ensure that a defendant has "essentially the same opportunity to litigate the issue of his mental retardation as he would have had if the case were tried today, with the benefit of the OCGA § 17-7-131 (j) death-penalty exclusion."[16] *Fleming* specifies that this procedure is remedial only and does not apply to capital defendants who are tried after the effective date of OCGA

---

[9] (Emphasis supplied.) *Burgess v. State*, 264 Ga. 777, 790 (36) (450 SE2d 680) (1994).

[10] Id.; OCGA § 17-7-131 (j).

[11] *Burgess*, 264 Ga. at 791.

[12] Id.

[13] 259 Ga. 687 (386 SE2d 339) (1989).

[14] *Fleming*, 259 Ga. at 691.

[15] Id.

[16] *Zant v. Foster*, 261 Ga. 450, 451 (4) (406 SE2d 74) (1991).

§ 17-7-131 (j).[17]

The question of what burden applies, beyond a reasonable doubt or preponderance of the evidence, therefore depends on when the trial was held. If Stephens was tried after the enactment of OCGA § 17-7-131 (j), he would be required to prove mental retardation beyond a reasonable doubt. If Stephens was tried before the enactment of OCGA § 17-7-131 (j), he would be permitted to prove mental retardation by a preponderance of the evidence. With regard to this issue, Stephens's situation is unusual: the guilt-innocence phase of his trial occurred before the enactment of OCGA § 17-7-131 (j), and the sentencing phase occurred afterwards.

We conclude that the timing of the guilt-innocence phase determines which burden of proof applies. This must be so, because the statutory scheme established by our legislature to effectuate the public policy against execution of the mentally retarded requires that the defendant's claim of mental retardation be decided in the guilt-innocence phase. Like the petitioners in *Fleming* and *Foster*, Stephens was unable to avail himself of this statutory scheme. Therefore, like the petitioners in *Fleming* and *Foster*, Stephens should have only been required at his 1989 sentencing trial to prove his mental retardation by a preponderance of the evidence. Accordingly, we reverse Stephens's death sentence, and remand for a sentencing trial where Stephens bears the burden of proving his alleged mental retardation by a preponderance of the evidence.

3. The trial court was not required to vacate Stephens's convictions due to Stephens's purported mental retardation. This Court affirmed Stephens's convictions in 1981 on direct appeal,[18] and the Eleventh Circuit Court of Appeals upheld Stephens's convictions on federal habeas corpus.[19]

4. At the 1989 sentencing trial, Stephens presented psychiatric evidence in support of his claim of mental retardation and mental illness. In order to rebut that evidence, the State presented several doctors who had previously performed physical and psychological examinations on Stephens. Stephens objected, claiming that the use of these examinations violated his Fifth Amendment right against self-incrimination, and his Sixth Amendment right to have counsel be informed of the examinations and their possible uses against Stephens at trial.

In rebuttal of Stephens's evidence of mental retardation and ill-

---

[17] *Fleming*, 259 Ga. at 691 (4), n. 4; see also *Turpin v. Hill*, 269 Ga. 302, 304 (4) (498 SE2d 52) (1998).

[18] *Stevens*, 247 Ga. 698.

[19] *Stephens*, 846 F2d 642 (holding that Stephens's trial counsel had not been ineffective in the guilt-innocence phase).

ness, the State relied upon five previously conducted physical and mental examinations. Stephens's examinations in 1978 and 1979 had been ordered by trial courts, at the request of Stephens's defense counsel at the time, in order to determine competency and criminal responsibility.[20] Stephens's examinations in 1981 and 1984 were conducted pursuant to a consent order entered in an unrelated class-action lawsuit while Stephens was imprisoned, which required the Department of Corrections to provide psychological testing and treatment to all death-row inmates.[21] A 1988 examination of Stephens was also conducted while he was in prison, although (as explained below) the record is inconclusive as to who requested that examination.

Because Stephens presented evidence of his alleged mental retardation and mental illness through expert witnesses, there is no Fifth Amendment error caused by the State countering that evidence with psychiatric evidence of its own.[22] When, in support of a claim of mental retardation or illness, a capital defendant

> presents [expert] psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant [relied upon]. The defendant [has] no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution . . . [for] such a limited rebuttal purpose.[23]

The reason for this is quite simple — in prosecutions such as this one, where the defendant does not testify and asserts a defense of mental retardation through expert testimony, the State could not respond unless it could present other, countervailing, psychiatric evidence.[24] Accordingly, we reject Stephens's Fifth Amendment claim.

We also reject Stephens's Sixth Amendment claim of insufficient notice of the examinations and the possibility that they could be used against him at trial. The 1978 and 1979 examinations were requested by Stephens's trial counsel at the time, so notice of these examinations was obviously provided to Stephens's counsel. Stephens

---

[20] The 1978 examination was in anticipation of an unrelated felony charge for which Stephens was acquitted; the 1979 examination was in anticipation of Stephens's original trial for malice murder.

[21] *Daniels et al. v. Zant,* Civ. No. 79-110-MAC (M.D. Ga. June 5, 1981).

[22] *Powell v. Texas,* 492 U. S. 680, 684-685 (109 SC 3146, 106 LE2d 551) (1989); *Hargrave v. Wainwright,* 804 F2d 1182, 1192 (11th Cir. 1986); *Hammock v. State,* 210 Ga. App. 513, 514 (1) (436 SE2d 571) (1993).

[23] *Buchanan v. Kentucky,* 483 U. S. 402, 423 (III) (B) (107 SC 2906, 97 LE2d 336) (1987).

[24] Id.

also claims that those two examinations were conducted solely to determine competency and criminal responsibility, and that counsel had no notice that they could be used to undermine a mitigation defense of mental retardation and mental illness. However, Stephens's counsel does not complain that the examinations exceeded the scope of the notice,[25] and Stephens's attorneys were presumed to have understood that, if they "intended to put on a 'mental status' defense . . . [they] would have to anticipate the use of psychological evidence by the prosecution in rebuttal."[26] With regard to the examinations conducted in 1981 and 1984, Stephens had already been convicted and sentenced, and his direct appeal had been exhausted. Therefore, his Sixth Amendment right to counsel had ended with regard to those two examinations,[27] which were conducted in the normal course of prison administration, with no trial pending.

Finally Stephens has waived any objection to the admission of the 1988 examination. The Eleventh Circuit issued its opinion vacating Stephens's death sentence on April 22, 1988, and shortly thereafter, a physical and neurological examination of Stephens, to "rule out any significant disease," was conducted in prison by Dr. Slade. A notation on Dr. Slade's report states that the examination was "requested by AG's office." It is undisputed that none of the lawyers representing Stephens were notified about this examination. At trial, the results of Dr. Slade's examination were elicited by the State from a defense expert on cross-examination. The defense expert testified that he had reviewed Dr. Slade's report while analyzing Stephens, and the jury heard part of Dr. Slade's report read to the expert, who denied that it affected his diagnoses of mental retardation and mental illness.[28] Stephens did not object to the State's questions of the defense witness with regard to the 1988 examination. Stephens later objected on Sixth Amendment grounds when the State called Dr. Slade to testify in rebuttal to evidence regarding the 1988 examination.

We are not persuaded by the State's argument that Stephens had no Sixth Amendment right at the 1988 examination because, even though the United States Supreme Court had not yet denied the petition for certiorari, a new sentencing trial was virtually assured in April 1988 when Stephens's death sentence was vacated by the Elev-

---

[25] See *Buchanan*, 483 U. S. at 424-425 (III) (B).

[26] See id.

[27] *Pennsylvania v. Finley*, 481 U. S. 551, 555 (107 SC 1990, 95 LE2d 539) (1987) (no constitutional right to counsel after the defendant's conviction has become final due to the exhaustion of the appellate process).

[28] The report stated that Stephens exhibited normal thought content and emotional tone, and that he knew the presidential candidates. Stephens also told Dr. Slade that he had finished the 12th grade.

enth Circuit. Stephens was in custody and the State knew that Stephens almost certainly faced a second sentencing trial where his mental status would be an issue. Further, the State knew that Stephens was represented by counsel.[29] However, " 'it is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which [the party] might have had. [Cits.]' "[30] Stephens's claim that the 1988 examination results should not have been admitted is therefore waived because the jury had already heard, without objection, the part of Dr. Slade's report that dealt with Stephens's mental state.

Stephens also complains about prosecutorial misconduct because the Attorney General's office, by allegedly ordering the 1988 examination without notice to Stephens's counsel, engaged in an ex parte communication with a party it knew to be represented by counsel.[31] The Attorney General requested a remand so that a hearing could be held on this issue. At the hearing, members of the Attorney General's office testified that they did not request the examination, and Dr. Slade's supervisor, who wrote "requested by AG's office" on the consultation request portion of the report, did not remember why he made that notation. The trial court examined the Attorney General's file and discovered no documents pertaining to an examination request. Therefore, while we are concerned about the unusual circumstances of the 1988 examination, we are constrained to conclude that there is insufficient evidence to find prosecutorial misconduct by the Attorney General's office associated with the examination.

5. Because we have reversed Stephens's death sentence, we need not address Stephens's remaining enumerations of error.

*Judgment reversed. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who dissent.*

THOMPSON, Justice, dissenting.

Although the guilt-innocence trial was held prior to the effective date of OCGA § 17-7-131, it was determined by the Eleventh Circuit Court of Appeals that Stephens was not denied effective assistance of counsel during that proceeding. That Court took into consideration the results of a 1979 court-ordered psychiatric evaluation showing "no evidence of a mental disability or disorder." *Stephens v. Kemp,* 846 F2d 642, 655 (11th Cir. 1988). The Court concluded that trial counsel's reliance on that evaluation "was reasonable insofar as the

---

[29] Stephens's habeas counsel had represented Stephens for several years of habeas corpus litigation against the State. One of Stephens's habeas lawyers was also appointed to be his trial counsel for the 1989 sentencing trial.

[30] *Guthrie v. Bank South,* 195 Ga. App. 123, 126 (4) (393 SE2d 60) (1990), quoting *Hall County Mem. Park v. Baker,* 145 Ga. App. 296, 298 (4) (243 SE2d 689) (1978).

[31] See DR 7-104 (A) (1).

guilt phase of the proceeding, and [there was] no failure of counsel in that regard." Id. Thus, Stephens neither had a viable mental retardation defense at the time of his 1980 trial, nor was counsel deficient in failing to inquire into the matter further.

Almost 20 years later, the majority would reverse Stephens' second sentencing trial because the trial court failed to instruct the jury on a preponderance of the evidence standard of proof on the question of his mental retardation raised in mitigation of imposition of the death penalty. The majority premises its conclusion on the rationale of *Zant v. Foster*, 261 Ga. 450 (406 SE2d 74) (1991) and *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989). Those habeas corpus cases gave relief to capital defendants who were tried before enactment of OCGA § 17-7-131 (c) (3) and (j), the statutory procedure preventing execution of mentally retarded defendants. In my opinion, *Fleming*, *Foster*, and their progeny were erroneously decided and should be overruled. The intent of those cases was to provide for those defendants

> essentially the same opportunity to litigate the issue of [their] mental retardation as [they] would have had if the case[s] were tried today, with the benefit of the OCGA § 17-7-131 (j) death-penalty exclusion.

*Zant v. Foster*, supra at 451 (4). However, the plain language of OCGA § 17-7-131 (c) (3), requires that a defendant prove his mental retardation "beyond a reasonable doubt" in order to be found guilty but mentally retarded. See *Burgess v. State*, 264 Ga. 777 (36) (450 SE2d 680) (1994). Thus, instead of providing a capital defendant with the "same opportunity" as that defendant would have with the benefit of the statutory procedure against the execution of mentally retarded defendants, *Fleming* and *Foster* allow such defendants the lesser burden of proving their retardation by a preponderance of the evidence. Therein lies the fallacy. Because I believe the trial court applied the correct standard of proof, I would affirm Stephens' sentencing trial on this ground.

I am authorized to state that Justice Hunstein and Justice Carley join in this dissent.

DECIDED DECEMBER 4, 1998 —
RECONSIDERATION DENIED DECEMBER 17, 1998.

*Peter D. Johnson, John R. Carroll,* for appellant.
*Daniel J. Craig, District Attorney, Thurbert E. Baker, Attorney*

*General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.