[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 7, 2011
JOHN LEY
CLERK

_____

No. 10-10928

_____

D.C. Docket No. 3:01-cv-00073-DHB

JOHN WAYNE CONNER,

Petitioner-Appellant,

versus

HILTON HALL,
Warden, Georgia Diagnostic
and Classification Prison,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(July 7, 2011)

Before CARNES, MARCUS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

John Wayne Conner, a prisoner under sentence of death in the State of

Georgia, appeals the District Court's denial of his petition for writ of habeas corpus brought under 28 U.S.C. § 2254. Conner was granted a certificate of appealability ("COA") as to three claims denied by the District Court without an evidentiary hearing: (1) whether he procedurally defaulted his mental retardation claim; (2) whether he was denied effective assistance of counsel at the sentencing phase of his trial; and (3) whether he was prejudiced by prosecutorial misconduct during closing arguments. For all the reasons below, we VACATE the District Court's judgment denying Conner's habeas petition and REMAND the entire case to the District Court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Conner was convicted and sentenced to death for the January 9, 1982 beating death of J.T. White in Telfair County, Georgia.[1] At the time of the murder, Conner lived with his girlfriend, Beverly Bates, in Milan, Georgia. On the evening of January 9, 1982, Conner, Bates, and White went with friends to a party in Eastman, Georgia, where they spent the evening drinking and smoking marijuana. They returned to Conner's house in Milan around midnight. Soon after, Conner and White left the house on foot, taking with them a nearly empty

---

[1] A fuller discussion of the facts may be found in the opinion of the Georgia Supreme Court written in Conner's direct appeal. Conner v. State, 303 S.E.2d 266 (Ga. 1983).

bottle of bourbon.  They walked to a friend's house and asked him to take them to get more whiskey, but the friend refused.

Then, according to Conner's confession:

> [M]e and J.T. left and went down the road.  J.T. made the statement about he would like to go to bed with my girlfriend and so I got mad and we got into a fight and fought all the way over to the oak tree and I hit him with a quart bottle.  He run over there to the fence trying to get through or across, I reckon, so I run over there and grabbed him and pulled him back and hit him again and he fell in the water and he grabbed my leg.  I was down there at him right there in the ditch where he was at and he was swinging trying to get up or swinging at me to try to hit me one, and there was a stick right there at me, and I grabbed it and went to beating him with it.

Conner, 303 S.E.2d at 270 (internal quotation makes omitted).  The next day, White's body was found in a drainage ditch in Milan with severe injuries to his head.  Conner was indicted for murder, armed robbery and motor vehicle theft.

## A.  TRIAL PROCEEDINGS

On January 26, 1982, while in the Telfair County Jail, Conner pounded a bullet into his chest until it exploded.  As a result, he was admitted to Central State Hospital ("CSH") in Milledgeville, Georgia.  According to the records from that visit, Conner was "mute, uncooperative and appeared to be semicatatonic" upon admission.  He showed "complete psychomotor retardation and [was] unable to answer any questions."  Conner was medicated and placed on "suicide

3

precautions." He later became cooperative and responsive.

By court order, Conner remained hospitalized at CSH until February 19, 1982, while the staff evaluated him for competency and insanity. During his stay, the staff produced a "Psychiatric Examination," a "Psychological Evaluation," and a "Final Summary." Those documents revealed that Conner had a history of drug and alcohol abuse and engaged in anti-social behaviors. They also showed that Conner used the alcohol and drugs to alleviate his constant feelings of nervousness and depression, but his substance abuse only exacerbated those feelings. The documents further indicate that although the personality testing suggested schizophrenia, the results were not inconsistent with a substance abuse disorder. An IQ test administered while Conner was at CSH revealed a full-scale Weschler Adult Intelligence Score IQ score of 87, which placed Conner within the normal or average range of intelligence. On February 19, 1982, CSH issued a letter to the trial judge stating that Conner was competent to stand trial and could be held criminally responsible for his actions.

Conner's father initially retained David Morgan to represent Conner in the underlying criminal case. About the same time, Dennis Mullis, a public defender, was appointed to represent Conner in an unrelated case. When it became clear that Conner's father would not be able to pay Morgan's fees through the pendency of

the criminal case, Mullis was appointed to assist Morgan in representing Conner.

On April 30, 1982, Morgan filed a motion for funds to hire a defense expert to perform a mental examination because he was considering raising an insanity defense. This motion was heard on May 11, 1982. At that time, the court had the benefit of the February 19, 1982 CSH letter stating that Conner was competent to stand trial. Mullis stated that he could not determine if CSH had done anything wrong in its examination without an independent expert to assist him.

Nevertheless, the state trial court deferred ruling on the motion because the defense had not yet filed a motion to raise the insanity defense. At a later pre-trial hearing on June 21, 1982, Morgan withdrew from the case and Mullis became Conner's sole counsel. At a hearing on June 30, 1982, Mullis announced that he would not be seeking to assert the insanity defense based upon his review of additional information private counsel had obtained from CSH. After that, Mullis did not file any other motion pertaining to Conner's mental health nor did he request the appointment of an independent mental health examiner.

At his jury trial on July 12–14, 1982, Conner neither testified nor presented any evidence on his own behalf. During his guilt phase closing argument, the prosecutor said the following:

Ladies and gentleman, as prosecutor, as defense attorney, I have been

5

involved in criminal law for seven years. As District Attorney of this circuit, I have prosecuted nine murder cases. I have never before sought the death penalty. I have seen several killings. I have been responsible for prosecuting several terrible killings. I have never before sought the death penalty.

Conner's counsel objected. The trial court sustained the objection and gave the jury a curative instruction not to consider the penalty before deciding guilt or innocence.

After deliberating for fifty minutes, the jury found Conner guilty on all counts. Before the sentencing phase, the trial court granted defense counsel a brief recess for Mullis to confer with Conner. When the proceedings reconvened, the court asked Mullis if he planned to present any evidence in mitigation. Mullis responded:

> Your Honor, I had planned on calling four witnesses—of course, the defendant, and his brother, and father, and his mother. After the verdict came in I talked to Mr. Conner in a room adjacent to the courtroom and he has informed me that he does not desire me to enter any evidence in mitigation. He does not desire to do that himself, he has told me. I have counsel[ed] him that my advice would be to do otherwise. My advice would be to put in some evidence to mitigate this. He has told me he does not desire to do that.

The following colloquy then took place between the court and Conner:

> THE COURT:  Mr. Conner, do you understand your rights to present evidence?

6

MR. CONNER:     Yeah.

THE COURT:     And you have instructed your counsel and you are telling the Court now that you do not want to put anything in in evidence of mitigation?

MR. CONNER:     That's right.

THE COURT:     All right, sir.  That's your privilege.

The prosecution and the defense then made their closing arguments without presenting any additional evidence.  During his sentencing phase closing, the prosecutor once again expressed his personal belief, based upon his experience, that the death penalty was appropriate in Conner's case:

> As I told you, I have never previously sought the death penalty in any murder case, but I tell you, I am seeking it now, and I am asking this jury to go back to that jury room and return a verdict, or a decision to send John Wayne Conner to the electric chair.

Conner's counsel did not object to the prosecutor's sentencing phase closing argument, and no curative instruction was given.

The jury returned a death sentence upon a finding that the offense was "outrageously and wantonly vile, horrible and inhuman in that it did involve depravity of mind and aggravated battery to the victim." See O.C.G.A. § 17-10-30(b)(7).

### B.  DIRECT APPEAL

7

Conner appealed his conviction and sentence to the Georgia Supreme Court. Conner, 303 S.E.2d 266. After reviewing the sufficiency of the evidence, the court affirmed Conner's convictions for motor vehicle theft and murder but vacated his armed robbery conviction. Id. at 270–71. The court sua sponte reviewed the prosecutor's closing argument to ensure that Conner's death sentence was not imposed "under the influence of passion, prejudice, or any other arbitrary factor." Id. at 272–73 (quoting O.C.G.A. § 17-10-35(c) (1)). The court found the argument to be improper because "[t]he portion of the prosecutor's argument referring to his prior criminal experience and the frequency with which he had sought the death penalty was not supported by any evidence and, moreover, was not relevant to any issue in the case." Id. at 276. However, the court held that the remarks were "not so prejudicial or offensive and do not involve such egregious misconduct on the part of the prosecutor as to require reversal of [Conner's] death sentence on the basis that it was impermissibly influenced by passion, prejudice, or any other arbitrary factor." Id.

### C. FIRST STATE HABEAS PROCEEDING

Conner filed his first writ of habeas corpus in state trial court on March 23, 1984. Evidentiary hearings were held on September 24, 1984, and February 11, 1985.

8

In the first evidentiary hearing, Mullis testified about his representation of Conner at trial. He explained that although raising an insanity defense crossed his mind, he found nothing to substantiate such a claim. When asked about the CSH records, Mullis admitted that he knew that Conner had some psychiatric problems and suffered from drug and alcohol abuse. He further admitted that in seeking the appointment of an independent mental health examiner, he did not reveal to the trial judge any of the information contained in the CSH records.

Mullis testified that while he was considering potential mitigation, he spoke with Conner's parents and brother. They discussed Conner's "upbringing" and "socioeconomic information." Mullis stated that he learned that Conner had a deprived economic background and had not been raised "in the best of circumstances." After Conner was convicted, Mullis spoke with Conner's brother about testifying in mitigation. Also during this time, Mullis approached Conner's girlfriend, Beverly Bates, who had testified against him at trial, about testifying in mitigation, but she refused. Mullis described Conner's parents and brother as "waiting in the wings."

Mullis stated that his plan to present the testimony of Conner's family members changed when Conner informed him after the entry of the guilty verdict that he did not want to present any mitigation evidence. Mullis explained that

Conner said "something to the effect of letting [the jurors] do what they will."

Mullis testified that he explained the purpose of the evidence to Conner but that

Conner did not seem to care about himself.

Between the first and second evidentiary hearings, Conner filed several

affidavits in support of his habeas petition. At the second hearing, the state habeas

court admitted into evidence the affidavits of Conner's mother and father; his

sister, Linda Jones, and her husband, Phillip Jones; and his sister-in-law, Sally

Conner.[2]

According to the affidavit of Conner's mother, Mullis asked her and her

husband if they would be willing to testify on Conner's behalf during the

sentencing phase. Conner's mother stated that, had she testified, she would have

informed the court that Conner was a good and loving son who worked hard and

supported his family. As for Conner's relationship with his father, she explained

that they were close but that Conner's father beat him as a child and into his teens.

Conner's mother admitted that he had problems, describing him as a "very

troubled young man" who drank alcohol and used drugs. She explained that

Conner was always depressed and that he felt unloved. She also stated that

Conner tried to commit suicide in 1981.

---

[2] None of these affidavits included the address or telephone number of the affiant.

According to the affidavit of Conner's father, Mullis never asked if there were other family members and friends who would be willing to testify on Conner's behalf. Mullis never asked about Conner's school or work background or his relationship with other family members and friends. Conner's father explained that Conner suffered from constant depression as a teenager and started drinking heavily, which only deepened his depression. Conner's father also stated that he felt that Conner needed psychiatric help but the family could not afford it.

Conner's father also described a second suicide attempt, in which Conner tried to kill himself by cutting ropes holding him in a tree while he was working with his father in a tree surgery business. Conner told his father that he was trying to have an accident so that he would fall and kill himself. Conner's father stated that if he had the chance, he would have told the jury that Conner always tried to be a decent, honest person and that he wished he had the money to get Conner help for his depression when he was younger.

The other family affidavits attested to the same facts about Conner, and each family member stated that Mullis never asked them to testify on Conner's behalf in mitigation.

The state trial court entered a final order denying relief on January 6, 1997. In that order, the court identified and addressed twenty-six specific allegations of

11

ineffective assistance of trial and appellate counsel. In particular, the court considered Conner's claims that his trial counsel, Mullis, was ineffective for "'intolerably acquiescing' in [Conner's] decision not to present mitigating evidence" and for "failing to prepare evidence in mitigation." The court found that Mullis unsuccessfully tried to convince Conner to present mitigating evidence, and that Conner knowingly and intelligently waived his right to do so. The court also found that Mullis prepared to present evidence in mitigation, but that Conner's "own actions prevented [Mullis] from presenting evidence." As for the affidavits of Conner's family members, the court concluded that they did not overcome Conner's waiver of his right to present mitigation evidence or otherwise establish ineffectiveness of counsel. Finding Mullis's performance to be objectively reasonable, the court concluded that Conner could not prevail on his ineffective assistance of counsel claim. See Strickland v. Washington, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984).

## E. SECOND STATE HABEAS PROCEEDING

On October 3, 2001, Conner filed his second state habeas petition, asserting only one claim: that he is mentally retarded and therefore ineligible for the death penalty. To develop his claim, Conner requested access to an independent mental health examination. Conner supported his habeas petition with copies of his

12

school records and affidavits from three of his elementary school teachers.

Without an evidentiary hearing, the state habeas court denied Conner's request for a mental evaluation on October 26, 2001, concluding that the evidence was insufficient to support his claim of mental retardation. The court found that Conner's school records were inadmissible hearsay and his elementary school teachers' affidavits did not comport with O.C.G.A. § 9-14-48(c) because they did not include the affiants' phone numbers and addresses.[3] In the same order, the court dismissed the second petition as successive under O.C.G.A. § 9-14-51,[4] finding the claim could have been raised in an amendment to his original habeas petition because Fleming v. Zant[5] was decided while Conner's first state habeas

---

[3] As noted above, in Conner's first state habeas proceeding, the state habeas court admitted and considered Conner's family affidavits which did not contain addresses and telephone numbers.

[4] O.C.G.A . § 9-14-51 provides as follows:

All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

[5] In Fleming v. Zant, 386 S.E.2d 339 (Ga. 1989), the Georgia Supreme Court held that Georgia's 1988 statutory ban on executing mentally retarded persons applied retroactively, as a matter of Georgia constitutional law, to all capital cases in Georgia. Further, Fleming established a procedure for habeas courts to follow in evaluating mental retardation claims for defendants, like Conner, who were tried and sentenced before Georgia law prohibited the execution of mentally retarded persons. Id. at 342–43.

petition was pending in state court.

On January 25, 2002, Conner filed an application for a certificate of probable cause ("CPC") to the Supreme Court of Georgia to appeal the dismissal of his second state habeas corpus petition. His CPC application was denied on March 25, 2002. On April 4, 2002, Conner filed a motion for reconsideration, specifically noting that the United States Supreme Court had granted certiorari in Atkins v. Virginia, 534 U.S. 809, 122 S. Ct. 29 (2001). Conner argued in his motion for reconsideration that if the Supreme Court ruled in Atkins that the execution of mentally retarded persons violates the Eighth Amendment, then there could be no "default" of such a claim. The Georgia Supreme Court denied Conner's motion for reconsideration on April 12, 2002.

On June 20, 2002, the United States Supreme Court held the Eighth Amendment categorically prohibits the execution of a mentally retarded defendant.[6] Atkins, 536 U.S. at 321, 122 S. Ct. at 2254. Twenty-one days later,

---

[6] Atkins abrogated the Court's 1989 ruling in Penry v. Lynaugh, 492 U.S. 302, 340, 109 S. Ct. 2934, 2958 (1989), which had held that the Eighth Amendment did not preclude the execution of mentally retarded persons. Although recognizing that mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes, the Supreme Court reasoned that mentally retarded persons cannot be constitutionally executed for two reasons. First, "[b]ecause of their disabilities in areas of reasoning, judgment, and control of their impulses," mentally retarded defendants "do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." Atkins, 536 U.S. at 306, 122 S. Ct. at 2244; see also id. at 318–20, 122 S. Ct. at 2251. Second, "their impairments can jeopardize the reliability and fairness of capital proceedings against

14

on July 11, 2002, Conner filed a timely petition for certiorari in the United States Supreme Court in which he relied on Atkins.[7] The Supreme Court denied Conner's certiorari petition on October 7, 2002. Conner v. Head, 537 U.S. 908, 123 S. Ct. 249 (2002), reh'g denied, 537 U.S. 1069, 123 S. Ct. 657 (2002).

## F. FEDERAL HABEAS PROCEEDINGS

Conner filed his § 2254 petition in the District Court on November 13, 2001. The federal petition contained thirty-three separate claims for relief, including an Eighth Amendment challenge to the death penalty based on mental retardation under Atkins, 536 U.S. at 321, 122 S. Ct. at 2252.

On March 31, 2004, Conner filed a motion for leave to conduct limited discovery on his Atkins mental retardation claim. In his memorandum in support of that motion, Conner alleged that he was mentally retarded; that his elementary school records attested to his retardation; that his elementary school teachers who were still living were willing to attest to his retardation; that the state expert who examined him in 1982 found he suffered from "complete psychomotor retardation"; and that he had never been granted access to an independent defense

---

mentally retarded defendants." Id. at 306–07, 122 S. Ct. at 2244.

[7] As noted above, Conner's state postconviction proceedings were concluded at the time Atkins was decided. By promptly raising Atkins in a petition for certiorari, he raised it at his first available opportunity. Although Conner was not required to file a certiorari petition, we recognize that his efforts show he was diligent in pursuing his Atkins claim.

15

evaluation of his mental retardation claim. In support, Conner attached his school records and the affidavits of three of his elementary school teachers. Conner also argued that no court had ever heard the merits of his mental retardation claim.

Despite the state court's ruling that he procedurally defaulted his mental retardation claim, Conner argued, as he does now, that he followed Georgia's procedures as provided in Fleming, 386 S.E.2d 339, and Turpin v. Hill, 498 S.E.2d 52, 53–54 (Ga. 1998).[8] Conner also argued that the state's procedural bar was not adequate to bar federal review because it was not consistently applied.

On September 8, 2004, the District Court denied Conner's discovery request, determining that he had defaulted his mental retardation claim in state court. The District Court acknowledged that its "review of the case law lends credibility to Conner's position that [the state procedural bar] is inconsistently applied to claims of mental retardation." Nevertheless, the District Court held that the Georgia Supreme Court's denial of a CPC application in Conner's case, as well as a CPC denial by the Georgia Supreme Court in Hicks v. Schofield, 599 S.E.2d 156 (Ga. 2004), "could signal a reversal of the Turpin v. Hill rule" that state habeas petitions by capital petitioners asserting mental retardation would not

---

[8] In Turpin, the Georgia Supreme Court held that state habeas relief was available to capital petitioners asserting mental retardation claims in state habeas petitions, regardless of whether the claim had been procedurally defaulted. 498 S.E.2d at 53.

16

be barred by procedural default rules.[9]

After briefing by the parties, the District Court denied Conner's habeas petition in its entirety on November 6, 2009. The District Court granted Conner's request for a COA on two claims: (a) whether it erred in finding that Conner's claim of mental retardation was procedurally defaulted; and (b) whether it erred in concluding that Conner's trial counsel had not rendered ineffective assistance during the mitigation phase of his trial.

We expanded the COA to include a third claim: "Whether the district court erred in determining that the state court's decision—that the prosecutor's closing arguments were not so egregious as to require reversal—was not contrary to, or an unreasonable application of, Supreme Court precedent."

## II. STANDARDS OF REVIEW

We review <u>de novo</u> the district court's denial of a 28 U.S.C. § 2254 petition, but we are "highly deferential" to the state court's decision on the merits of a

---

[9] Specifically, the District Court stated:

In my view, the Georgia Supreme Court has implicitly, if not expressly, spoken to this issue with regard to this very petitioner by allowing the second state habeas court's ruling of procedural default to stand and rejecting Chief Justice Fletcher's position in dissent to grant the CPC application. Given this recent expression, I cannot conclude that the second state habeas court's application of the state procedural bar is an inadequate state ground to default the claim.

17

claim. <u>Cullen v. Pinholster</u>, --- U.S. ---, ---, 131 S. Ct. 1388, 1398 (2011) (the AEDPA deference "is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (quotation marks and citations omitted); <u>Harrington v. Richter</u>, --- U.S. ---, ---, 131 S. Ct. 770, 786 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.") (quotation marks omitted); <u>id.</u> ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . If this standard is difficult to meet, that is because it was meant to be."). If a state court has adjudicated the merits of a claim, we may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331 (11th Cir. 2007).

"A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or confronts facts that are materially indistinguishable from a relevant Supreme

Court precedent and arrives at a result opposite to [the Court's]." Windom v. Sec'y, Dep't of Corr., 578 F.3d 1227, 1247 (11th Cir. 2009) (internal quotation marks omitted) (alterations in original). A state court unreasonably applies federal law when it "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case," or when it "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Suggs v. McNeil, 609 F.3d 1218, 1227 (11th Cir. 2010) (quotation marks omitted). In determining unreasonableness, we do not ask whether the state court decided an issue correctly, but only whether the court's decision was objectively unreasonable. Renico v. Lett, --- U.S. ---, 130 S. Ct. 1855, 1862 (2010).

### III. DISCUSSION

#### A. PROCEDURAL DEFAULT OF MENTAL RETARDATION CLAIM

Under the doctrine of procedural default, a federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment," Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2253 (1991), unless a petitioner can show cause for the failure to properly present the claim and actual prejudice, or that the failure to consider the claim

19

would result in a fundamental miscarriage of justice.  <u>Wainwright v. Sykes</u>, 433

U.S. 72, 81–88, 97 S. Ct. 2497, 2503–07 (1977); <u>Marek v. Singletary</u>, 62 F.3d

1295, 1301–02 (11th Cir. 1995).   The adequacy of a state procedural bar to the

assertion of a federal question is itself a federal question.  <u>Lee v. Kemna</u>, 534 U.S.

362, 375, 122 S. Ct. 877, 885 (2002).

"To qualify as an 'adequate' procedural ground, a state rule must be 'firmly

established and regularly followed.'"  <u>Walker v. Martin</u>, --- U.S. ---, 131 S. Ct.

1120, 1127–28 (2011) (citation omitted).  Conner argues that Georgia's rules are

inadequate because Georgia has inconsistently applied its procedural default rule

to mental retardation claims brought by capital defendants similarly situated to

him.  We agree.  Under the unique facts of Conner's case, we hold that the

Georgia's procedural default rule, O.C.G.A. § 9-14-51, is inadequate to bar federal

review of Conner's mental retardation claim because it has not been consistently

and regularly followed.[10]

Under Georgia law, as we have previously recognized, "a prisoner seeking a

---

[10]  When applied to ordinary habeas petitioners who simply failed to include available claims in their initial petitions, the Georgia successor statute, O.C.G.A. § 9-14-51, is a valid procedural bar.  <u>See</u> <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1325–26 (11th Cir. 1998).  Unlike <u>Chambers</u>, which turned on the general nature of procedural bar at issue without regard to the claims held to be procedurally barred, this case involves only the adequacy of Georgia's successor statute as applied to a mental retardation claim raised in a second or successive state habeas petition.

writ of habeas corpus vacating his conviction must present all of his grounds for relief in his original petition." Mincey v. Head, 206 F.3d 1106, 1136 (11th Cir. 2000). Georgia's procedural default statute provides that:

> [a]ll grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

O.C.G.A. § 9-14-51. Ordinarily, failure to comply with this rule precludes federal habeas review. Mincey, 206 F.3d at 1136. But the State of Georgia has special rules of practice and procedure to handle mental retardation claims for capital defendants like Conner, whose trials occurred prior to Georgia's 1988 ban on executing mentally retarded persons. Our review in this case is limited, therefore, to the adequacy of Georgia's procedural default rules to bar federal review of mental retardation claims of defendants, like Conner, whose trials commenced before July 1, 1988.

By statute, Georgia law has prohibited execution of the mentally retarded since 1988.[11] See O.C.G.A. § 17-7-131(j). On its face, Georgia's statutory ban

_____

[11] In 1988 the Georgia legislature passed an amendment to O.C.G.A. § 17-7-131. Under the amended statute, the jury in a capital trial must decide at the time of trial on guilt or innocence of the defendant whether the defendant is "guilty but mentally retarded." Id. § 17-7-

21

against executing mentally retarded defendants does not apply to defendants who were tried before July 1, 1988.  Id.  But in Fleming v. Zant, 386 S.E.2d 339, the Georgia Supreme Court held that the Georgia Constitution's cruel and unusual punishment clause precluded the execution of mentally retarded persons, regardless of when a trial occurred.  Id. at 342–43.  Thus, Fleming applied the ban on executing mentally retarded persons retroactively and established procedures to be followed to examine mental retardation claims in state habeas proceedings.[12]

_____

131(c)(3).  If the defendant is found to be guilty but mentally retarded, the death penalty shall not be imposed.  O.C.G.A. § 17-7-131(j) provides:

> In the trial of any case in which the death penalty is sought which commences on or after July 1, 1988, should the judge find in accepting a plea of guilty but mentally retarded or the jury or court find in its verdict that the defendant is guilty of the crime charged but mentally retarded, the death penalty shall not be imposed and the court shall sentence the defendant to imprisonment for life.

[12]  In doing so, Fleming established a two-step process for Georgia courts to follow in resolving mental retardation claims raised by petitioners in Fleming's position:

> When a defendant who was tried before the effective date of the OCGA § 17-7-131(j) alleges in a petition for habeas corpus that he or she is mentally retarded, the habeas corpus court must first determine whether the petitioner has presented sufficient credible evidence, which must include at least one expert diagnosis of mental retardation, to create a genuine issue regarding petitioner's retardation. The court, in its discretion, may hold a hearing on the issue, or may make the determination based on affidavits, depositions, documents, etc. If, after examining the evidence, the habeas corpus court finds that there is a genuine issue, a writ shall be granted for the limited purpose of conducting a trial on the issue of retardation only.  This trial shall be held in the court in which the original trial was conducted. Petitioner shall be entitled to a full evidentiary hearing on the issue of retardation. The determination shall be made by a jury using the definition of retardation enunciated in the statute. See O.C.G.A. § 17-7-131(a)(3). The petitioner will bear the burden of proving retardation by a *preponderance of the evidence*.

22

Id.

Nine years after <u>Fleming</u>, the Georgia Supreme Court held in <u>Turpin v. Hill</u>, 498 S.E.2d 52, that a mental retardation claim raised by a capital habeas petitioner in a state habeas petition cannot be procedurally defaulted as a matter of state law. <u>Id.</u> at 53. Although Hill was convicted and sentenced to death in 1991, three years after the effective date of O.C.G.A. § 17-7-131(j)'s ban on executing mentally retarded defendants, he did not raise a mental retardation issue at trial or on direct appeal. <u>Id.</u> at 52. Hill then filed a state habeas corpus petition raising a mental retardation claim.[13] The state raised the defense of procedural default. The state habeas trial court ruled that the mental retardation claim was not subject to procedural default, and upon finding that Hill had presented sufficient credible evidence of mental retardation, granted a limited writ for jury trial on the issue of mental retardation based upon <u>Fleming</u>. <u>Id.</u> at 52–53. On appeal, the Georgia Supreme Court agreed with the state trial court, stating:

> In light of this Court's holding that the execution of the mentally retarded constitutes cruel and unusual punishment under the Georgia

<u>Fleming</u>, 386 S.E.2d at 342–43 (footnote omitted) (emphasis added).

[13] Hill supported his petition with an affidavit from a psychologist who testified at the penalty phase of his capital trial who averred that his penalty phase testimony was based on inadequate information and his prior IQ test results were inaccurate and misleading. <u>Turpin</u>, 498 S.E.2d at 52 n.1.

Constitution [in <u>Fleming</u>], we find no error in the habeas court's consideration of appellee's claim of mental retardation. "In all cases habeas corpus relief shall be granted to avoid a miscarriage of justice."

<u>Turpin</u>, 498 S.E.2d at 53 (quoting O.C.G.A. § 9-14-48(d)) (citation and footnote omitted).

In this case, the District Court held that Conner's mental retardation claim was procedurally barred because the Georgia habeas court dismissed Conner's second habeas petition as successive under O.C.G.A. § 9-14-51, finding the claim could have been raised in an amendment to his original habeas petition because <u>Fleming</u> was decided while Conner's first state habeas petition was pending in state court. After careful review of Georgia's actual practice and procedure for addressing mental retardation claims for state habeas petitioners similarly situated to Conner,[14] we are compelled to conclude that the procedural bar is inadequate to bar federal review because it has not been consistently and regularly applied.

The inadequacy of Georgia's procedural default rule, O.C.G.A. § 9-14-51, as a bar to federal review of Conner's mental retardation claim is illustrated by the numerous Georgia habeas petitioners, similarly situated to Conner, who have

---

[14] Conner has cited a plethora of judicial orders, opinions, and written dispositions from the state courts of Georgia which are not available in a publicly accessible database. He has filed and served copies of these materials with his briefs in this Court, a copy of which will be maintained by the Clerk of this Court and made available for public inspection.

24

been granted access to independent mental health evaluations and <u>Fleming</u> remands since <u>Fleming</u> and <u>Turpin,</u> regardless of whether they brought their mental retardation claims in a second or third state habeas petition. Indeed, since <u>Fleming</u> issued, numerous Georgia death-sentenced prisoners whose trials, like Conner's, commenced before July 1, 1988, the effective date of O.C.G.A. § 17-7-131(j), have obtained independent expert access and remands for mental retardation trials from claims filed in second or successive state habeas petitions. <u>See</u> <u>Fleming v. Zant</u>, 89-V-2252 (Super. Ct. Butts Cty., Ga. Mar. 18, 1991) (remanding case in 1991 for jury trial on issue of mental retardation following petitioner's raising mental retardation claim for the first time in a third (second successive) state habeas corpus petition filed in 1989); <u>Allen v. Zant</u>, No. 90-V-3326 (Super. Ct. Butts Cty., Ga. Sept. 20, 1991) (granting in 1991, after Allen filed successive state habeas petition in 1991 that alleged mental retardation and attached school records and affidavits from family members and school principal, access for two mental health evaluations and subsequently remanding case for a trial on mental retardation); <u>Collins v. Zant</u>, No. 90-V-3211 (Sup. Ct. Butts Cty., Ga. Mar. 18, 1991) (granting in 1991, after Collins alleged mental retardation for the first time in a second successive state habeas petition filed in 1990, independent expert access and testing and remanding case to the trial court under

25

Fleming for a jury trial on mental retardation); Gates v. Zant, No. 89-V-2468 (Super. Ct. Butts Cty., Ga. Apr. 13, 1992) (granting independent expert access in 1990 and then remanding claim for jury trial in 1991 to petitioner who alleged mental retardation in a successor state habeas petition filed in 1989); Mathis v. Thomas, No. 95-V-658 (Super. Ct. Butts Cty., Ga. Sept. 13, 2001) (granting independent expert access in 1995 to petitioner who raised mental retardation claim in his third (second successive) state habeas petition in 1995, then remanding case in 2001 for jury trial to determine mental retardation); Peek v. Zant, No. 86-V-830 (Super. Ct. Butts Cty., G. June 11, 1990) (remanding in 1990 for jury trial on mental retardation claim filed in successor state habeas corpus petition); Rogers v. Thomas, No. 94-V-661 (Super. Ct. Butts Cty., Ga. 1995 May 22, 1995) (granting independent expert access in 1994 to petitioner who raised mental retardation claim in successor state habeas petition filed in 1994 and remanding for jury trial on mental retardation in 1995), aff'd, Rogers v. State, 575 S.E.2d 879 (Ga. 2003);  Walker v. Zant, No. 90-V-2984 (Super. Ct. Butts Cty., Ga. May 17, 1991) (granting independent expert access in 1991 to petitioner who filed successive habeas petition in 1990, remanding for Fleming jury trial on mental retardation in 1991), denial of first state petition aff'd without opinion, Kemp v. Walker, 389 S.E.2d 761 (Ga. 1990) (table); Waters v. Thomas, No. 95-V-441

(Super. Ct. Butts Cty. Ga. Dec. 6, 1995) (same); <u>Wilson v. Zant</u>, No. 90-V-2935

(Super. Ct. Butts Cty., Ga. Mar. 15, 1991) (same).[15]

Considering the fact that in the vast majority of cases where it has come up the Georgia courts have not applied that state's second and successive petition procedural bar rule to other petitioners' mental retardation claims, we disagree with the District Court's conclusion that the Georgia Supreme Court's denial of a certificate of probable cause (CPC) to appeal Conner's second habeas corpus petition signaled a "reversal" of the Georgia Supreme Court's <u>Turpin</u> rule that state habeas relief was available to capital petitioners asserting mental retardation claims in state habeas petitions to avoid a miscarriage of justice, regardless of whether the claim had been procedurally defaulted. <u>See</u> <u>Turpin</u>, 498 S.E.2d at 53. Georgia's miscarriage of justice exception was applied to allow consideration of otherwise procedurally defaulted mental retardation claims before and after Conner's second State Petition for Writ of Habeas Corpus was denied in late 2001 and his application for CPC was denied in early 2002.[16] Considering Georgia's

---

[15] Under O.C.G.A. § 9-14-43, a Georgia prisoner must file his habeas petition in the superior court of the county in which the petitioner is detained. Since Georgia prisoners under a death sentence are housed at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, their state habeas petitions are filed in Butts County.

[16] <u>See</u> <u>Turpin</u>, 498 S.E.2d 52; <u>Head v. Ferrell</u>, 554 S.E.2d 155, 166–67 (Ga. 2001) (finding no error in state habeas court's consideration of mental retardation claim under miscarriage of justice exception to procedural default under <u>Turpin</u>); <u>Schofield v. Holsey</u>, 642

application of its procedural bar rules to other mental retardation claims, "one cannot seriously contend that the [Georgia] Court has applied its procedural bar rules evenhandedly to all similar claims." Dugger v. Adams, 489 U.S. 401, 420, 109 S. Ct. 1211, 1222 (1989) (quotation marks omitted). We therefore conclude that Georgia's inconsistent application of the miscarriage of justice exception to procedural default in cases of mental retardation renders the procedural bar in Conner's case inadequate to preclude federal review. See Spencer v. Kemp, 781 F.2d 1458, 1470 (11th Cir. 1986) ("It is a dominant theme of the Supreme Court case law . . . that a federal habeas petitioner shall not be denied federal review of a federal constitutional claim on the basis of an asserted state procedural ground that is manifestly unfair in its treatment of that claim.").

Since there is no adequate procedural bar precluding federal review, we now turn to the District Court's treatment of Conner's mental retardation claim.

---

S.E.2d 56, 63 (Ga. 2007) (finding that petitioner had not established mental retardation, but noting that "the habeas court was correct in considering this new claim, because this Court, under the 'miscarriage of justice' exception to the rule of procedural default, has authorized habeas courts to consider alleged mental retardation when the issue was not raised at trial"); Hall v. Lewis, 692 S.E.2d 580, 593 (Ga. 2010) (holding unappealed finding by habeas court that petitioner was mentally retarded under "miscarriage of justice" exception to procedural default rendered moot new sentencing trial based upon ineffective assistance of counsel); see also Rogers v. State, 575 S.E.2d 879, 881 (Ga. 2003) ("A defendant tried prior to July 1, 1988, for whom no judicial determination on mental retardation will have been made, may choose to raise the issue of his or her mental retardation by filing a petition for habeas corpus and presenting sufficient credible evidence, including at least one expert diagnosis of mental retardation, to create a genuine issue regarding retardation.").

Conner requested discovery and an evidentiary hearing in the District Court on his mental retardation claim, as he had done in his second state habeas petition. Indeed, Conner had requested access to an independent mental health examination in both state and federal court, but his requests were denied. The District Court denied Conner's request for discovery and an evidentiary hearing because it determined Conner had procedurally defaulted his mental retardation claim. Since we hold Conner did not procedurally default his claim, the District Court's order denying discovery and an evidentiary hearing on this basis was error.

Although we could determine whether Conner is entitled to discovery and an evidentiary hearing, we decline to do so. Ordinarily, the district court should have the first opportunity to decide whether discovery and an evidentiary hearing are appropriate under the relevant rules governing these procedural issues. We recognize that habeas law vests district courts with some discretion in such matters. See, e.g., Rule 6(a) of the Rules Governing § 2254 Cases ("A party shall be entitled to invoke processes of discovery available under Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."); Bracy v. Gramley, 520 U.S. 899, 909, 117 S. Ct. 1793, 1799 (1997) ("Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the

29

discretion of the District Court."); Williams v. Allen, 542 F.3d 1326, 1346–48 (11th Cir. 2008) (stating "district court's decision to grant or deny an evidentiary hearing [is reviewed] for abuse of discretion" and discussing considerations applicable to deciding whether evidentiary hearing is precluded, mandatory, or discretionary). Accordingly, we remand Conner's case to the District Court for it to determine whether discovery and an evidentiary hearing are appropriate.

To guide the District Court in the exercise of its discretion, we add the following general observations, without expressing an opinion as to the merits of Conner's mental retardation claim. First, with respect to whether Conner is entitled to an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940 (2007). Ordinarily, federal courts must take into account the deferential standards prescribed by 28 U.S.C. § 2254(d) in deciding whether an evidentiary hearing is appropriate. Id. But in this case, we find that Conner's mental retardation claim was never adjudicated on the merits in state court because of the state court's determination that Conner's claim was procedurally barred. Thus, the District Court is not bound by AEDPA's deferential standards in 28 U.S.C. § 2254(d) and federal court review is de novo.

See Porter v. McCollum, --- U.S. ---, 130 S. Ct. 447, 452 (2009) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's Strickland claim de novo.").

Second, in considering whether Conner's factual allegations regarding his mental retardation, if true, would entitle him to habeas relief, we are guided by the Supreme Court's decision in Atkins. In Atkins, the Supreme Court recognized "that a national consensus has developed against" executing the mentally retarded. Atkins, 536 U.S. at 316, 122 S. Ct. at 2249. But to the extent there is disagreement about executing mentally retarded offenders, Atkins recognized "it is in determining which offenders are in fact retarded." Id. at 317, 122 S. Ct. at 2250. The Court left "to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." Id. (quoting Ford v. Wainwright, 477 U.S. 399, 405, 416–17, 106 S. Ct. 2595, 2605 (1986)); see also Bobby v. Bies, --- U.S. ---, 129 S. Ct. 2145, 2150 (2009) (reaffirming that Atkins had "left to the States the task of developing appropriate ways to enforce the constitutional restriction" on executing the mentally retarded); Thomas v. Allen, 607 F.3d 749, 752 (11th Cir. 2010). Thus, when considering Conner's mental retardation claim, the District Court must apply Georgia's

31

substantive mental retardation criteria.[17] See, e.g., Thomas, 607 F.3d at 752.

Finally, we observe that § 2254(e)(2)'s prohibition against evidentiary hearings does not apply in this case because Conner has not "failed to develop the factual basis of" his mental retardation claim within the meaning of 28 U.S.C. § 2254(e)(2). See Williams v. Taylor, 529 U.S. 420, 437, 120 S. Ct. 1479, 1491 (2000) ("If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements."). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432, 120 S. Ct. 1488. As noted above, Conner filed a second state habeas petition, which was supported by school records and teacher affidavits, shortly after his first state habeas corpus was denied CPC by the Georgia Supreme Court. At that time, he requested and was denied independent access for a mental health evaluation and an evidentiary

---

[17] By statute, Georgia defines "[m]entally retarded" as "significantly subaverage general intellectual functioning resulting in or associated with impairments in adaptive behavior which manifested during the developmental period." O.C.G.A. § 17-7-131(a)(3). In Georgia, significantly subaverage intellectual functioning generally requires an IQ score of 70 or below. Stripling v. State, 401 S.E.2d 500, 504 (Ga. 1991). Because Conner was tried before July 1, 1988, Georgia law requires that he prove his mental retardation by a preponderance of the evidence. Fleming, 386 S.E.2d at 342–43.

32

hearing to support his mental retardation claim. Further, at the time <u>Fleming</u> was announced in 1989, Conner was several years post-hearing and had no viable avenue for getting a mental health evaluation given Georgia's long-standing policy not to permit mental health experts into the prison without a court order. Under the unique facts of Conner's case, we conclude that Conner was diligent in his efforts to develop the factual record in support of his claim. Thus, § 2254(e) does not preclude a federal evidentiary hearing.

For all of these reasons, we vacate the District Court's order finding procedural default and its judgment denying Conner discovery and an evidentiary hearing. We remand this claim to the District Court to determine whether Conner is entitled to discovery and an evidentiary hearing on his mental retardation claim consistent with this opinion and with Georgia's substantive mental retardation standards.

## B. REMAINING CLAIMS

Having determined that we must vacate the District Court's judgment denying Conner's petition and remand for further proceedings on the mental retardation claim, it is unnecessary for us to decide anything regarding the other two claims—the ineffective assistance of counsel at sentencing claim and the

33

prosecutorial misconduct claim. Our remand is not limited but is, instead, a remand of the entire case.

Accordingly, we VACATE the District Court's judgment denying Conner's habeas petition and REMAND the entire case to the District Court for further proceedings consistent with this opinion.

**VACATED and REMANDED.**